17 N.J. Super. 185 (1951)
85 A.2d 557
WILLIAM F. KEEFE, PLAINTIFF,
v.
FRANK R. JOHNSON, DEFENDANT.
Superior Court of New Jersey, Morris County Court Law Division.
Decided October 29, 1951.
*186 Mr. H.W. Doremus, attorney for the plaintiff.
Mr. Nelson K. Mintz, attorney for the defendant.
LANCE, J.C.C.
This suit is brought by William F. Keefe, a building contractor, against Frank R. Johnson (herein referred to as the owner), for an alleged balance due under a building contract.
The parties requested the County Court to hear the case without a jury, and it was so heard.
On October 9, 1947, the plaintiff and defendant entered into a written contract whereby the plaintiff was to erect a residence for the defendant. The cost of this building is one of the chief disputes of the case, as the parties advance different interpretations of the contract. The contractor claims there is a balance due him of $3,784.38, with interest. The owner filed a counterclaim for $15,000, in which he alleged that much of the work was defective and that he was forced to complete the dwelling at his own expense.
This has been a cumbersome case to try. Not only were the hearings filled with technical testimony as to the quality and nature of the work performed, but also testimony had to be heard in order to interpret the contract.
It would appear that our law has evolved no entirely satisfactory method of determining disputes of this nature, where a contractor sues for a balance he alleges to be due for the construction of a building and the owner disputes the quantity and quality of the work.
There are at least three methods for the determination of issues of this nature: (1) by the traditional trial by jury; (2) by the trial judge, sitting alone without jury; (3) by arbitration.
*187 Each method has its advantages and disadvantages. This must be expected in this particular type of case where the testimony is technical, profuse with mathematical detail, and cumbersome.
A trial by jury, running many days in this particular case, would have had many disadvantages. In this State it is questionable whether jurors are permitted to take notes on the testimony they hear.
The second method also has its disadvantages. The average trial judge lacks experience and knowledge in the field of building construction. Suffice it to say, many trial judges would rather hear any other type of case.
Arbitration would seem to be a satisfactory method whereby architects, materialmen, building contractors and others trained in the construction field, could decide many of the issues involved by an inspection of the premises. However, the parties in this case refused to send the matter to arbitration. One of them claimed that legal questions were involved concerning the interpretation of the contract, and that a board of three arbitrators would have one or more laymen thereon who would not be versed in legal principles.
It was suggested the trial court hear the case without jury. The trial court stated to the parties that it was not well versed in the field of building construction and was reluctant to assume the responsibility without technical assistance. The court suggested to the parties that they empower the court to select some architect, building contractor or similar specialist, who would sit in an advisory capacity. The parties so stipulated in writing, and the court designated William M. Hunt of Lambertville, New Jersey, an architect licensed to practice in New Jersey. The architect was unknown to the parties and his office is some 40 miles from the site of the disputed building. The trial court ruled on all questions of evidence, made decisions as to the interpretation of the contract, and assumes the responsibility for the final decision. However, the trial court had the architect sit with him to hear the oral testimony and sought his assistance on technical *188 matters from time to time. The architect visited the site with the court both before and after the hearings.
One objection to this system might be that any decision by the trial judge is not solely his own, but rather a composite opinion. This is of necessity true. There would be no point in having a trained mind in any particular specialty hear the testimony, unless the court intended to make use of the specialist's knowledge and experience.
Although the decision rendered may be unsatisfactory to both parties, the trial court believes that the particular method used was best suited to this case. It has been stated that this method is unusual in the New Jersey courts. However, neither the courts nor the parties should be reluctant to experiment in the use of a new trial device, where all parties believe that the particular method is best suited to the production of an equitable result.
It is difficult to think of a case where more trouble and misunderstanding could arise between a contractor and the owner in the erection of a single dwelling. Although the owner was not subjected to financial demands from the filing of mechanics' lien claims, nevertheless, the following circumstances united to produce a protracted trial: (a) a dispute as to the type of building contract involved; (b) the inadequacy of the contractor's records, and (c) the unusually large number of changes in the work.

I. TYPE OF CONTRACT
The building contract was drawn by an architect on a printed form. One of the major disputes is the type of contract involved. The owner claims that the agreement was on a "cost plus fee basis with a guaranteed top." He claims that the building was not to cost the owner more than $33,200 and that such cost should include both the cost of labor and materials and the contractor's fee. He claims that if the cost of the building and the contractor's fee should be less than $33,200, the owner would pay the lesser sum.
*189 The contractor, on the other hand, argued that the building agreement was on a "cost plus fee basis with a guaranteed top on the contractor's fee only." In other words, the contractor contends that he agreed to erect the building with the owner paying (1) the actual cost of the construction (whatever that sum might be), plus (2) a fee for his services and supervision which would be either ten per cent of the completed cost of the work, or $3,320, whichever sum would be the less.
Most building contracts fall within one of the four following categories: (1) for a fixed sum; (2) on a cost plus fee basis; (3) on a cost plus fee basis with a guaranteed top; (4) on a cost plus fee basis with a guaranteed top on the contractor's fee only. In New Jersey at the present time, most building contracts fall within the first two categories. Only a small percentage would fall within the third class, and a still smaller percentage of such contracts would come within the fourth group.
The following clause is heavily relied upon by the owner in advancing his theory that the entire cost of the building, including contractor's fee, was not to exceed $33,200:

"ARTICLE 4. FEE FOR SERVICES
In consideration of the performance of the contract, the Owner agrees to pay the Contractor, in current funds as compensation for his services hereunder 10% of the completed cost; the cost not to exceed the sum of $33,200.00 which shall be paid as follows: in proportion to the cost of the work completed, and is to be paid with the payment for materials for the same period."
The material in italics was typewritten. The balance of the article was in printing, as were most of the 16 articles of the contract.
The contractor's interpretation of this clause was that he had entered a "cost plus fee agreement with a guaranteed top on his fee," whereby his fee was limited to either ten per cent of the completed cost, or $3,320, whichever sum was the smaller.
*190 The parties were asked to put in all testimony as to the nature of the contract first, in order to shorten what from the start all knew would be a protracted proceeding. This was done and the court decided that the agreement was a "cost plus fee contract with a guaranteed top on contractor's fee only." Many factors led to this conclusion. The owner leans most heavily on the clause in Article 4 reading, "cost not to exceed the sum of $33,200.00." It is to be noted, however, that Article 4 is captioned "Fee for Services." It would be unusual to expect the formula for the cost of the work to appear in a clause of this type. Moreover, the entire contract is on a printed form which would be used in the ordinary "cost plus fee" situation. To construe this contract as the owner contends would either modify or abrogate many of the other articles of the agreement, as for example, Article 2 (Changes in the Work), Article 5 (Costs to be Reimbursed), Article 6 (Costs not to be Reimbursed), and Article 7 (Costs to be Paid Direct by the Owner). Also under Article 10 (Separate Contracts) the owner had the right to demand that portion of the work "be executed under separate contracts let by the owner direct." If this contract were to be construed to give the owner a building for a cost not to exceed $33,200, the contractor would be placed in an awkward position by virtue of Article 10.

II. DAMAGES
The contractor conceded at the conclusion of the hearings that his testimony would not support a claim in his behalf in excess of $3,340.
As earlier stated, certain factors contributed to a cumbersome trial. The contractor did not keep adequate records and there were times when it would take the contractor as long as 20 minutes to produce from his records the answer to some specific question, as for example, the number of men working on any particular day on this contract.
Another factor was the large number of changes in the work. There was testimony concerning 50 to 60 changes. *191 To state that the building as actually erected bears only a vague resemblance to the plans and specifications as originally drafted, would be an overstatement. However, an unusually large number of changes in the work were made and many of these changes were of a substantial nature. For example, the change in the location of the building affected the depth of the foundation walls and the amount of the excavation. The exterior finish of the building was changed from wood siding as stipulated in the specifications and stucco was actually used. Some of the changes were made after the work was partly or completely done as specified in the plans and specifications, with the result that the work already done had to be torn out or modified.
In support of the counterclaim, there was considerable testimony as to the poor workmanship. These claims ranged all the way from an item of $1,900 for the removal and replacement of the stucco, down to hair line cracks in the block work. It appeared to the court that the two major defects in construction were in the stucco work and in the concrete floor in the laboratory.
The court, after giving the contractor credit for the sum it believes to be due him and after deducting therefrom such credits as should accrue to the owner on the counterclaim by virtue of faulty work, arrives at a net figure of $1,600.
Consequently, judgment will be entered in favor of the plaintiff, William F. Keefe, against the defendant, Frank R. Johnson, in the sum of $1,600, together with interest from the date requested in the complaint, and costs.