J-A11037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JENNA MARIE SCOTT, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM, JUDITH ALGEO, ESQUIRE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| LOWER BUCKS HOSPITAL, AMY L. HARVEY, M.D., MARK D. KUHN, M.D., LAURA CASTNER, RN, JO ANN BUTRICA, RN, AND MARY (BOYLE) ROMOLINI, RN | |
| APPEAL OF: AMY L. HARVEY, M.D., AND MARK D. KUHN, M.D. | No. 1140 EDA 2015 |

Appeal from the Order Dated April 10, 2015
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2010-01193

| | |
|---|---|
| JENNA MARIE SCOTT, A MINOR BY AND THROUGH HER GUARDIAN AD LITEM, JUDITH ALGEO, ESQUIRE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| LOWER BUCKS HOSPITAL, AMY L. HARVEY, M.D., MARK D. KUHN, M.D., LAURA CASTNER, RN, JO ANN BUTRICA, RN, AND MARY (BOYLE) ROMOLINI, RN | |
| APPEAL OF: LOWER BUCKS HOSPITAL, LAURA CASTNER, RN, JO ANN BUTRICA, RN, AND MARY (BOYLE) ROMOLINI, RN | No. 1306 EDA 2015 |

J-A11037-16

Appeal from the Order Dated April 10, 2015
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2010-01193

BEFORE: SHOGAN, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED JULY 21, 2016**

Appellants, Amy L. Harvey, M.D. and Mark D. Kuhn, M.D. (collectively Doctors)[1] and Lower Bucks Hospital, Laura Castner, RN, Jo Ann Butrica, RN, and Mary (Boyle) Romolini, RN (collectively Hospital), appeal from the April 10, 2015 order awarding a new trial to Appellee, Jenna Marie Scott (Scott), a minor by and through her guardian *ad litem*, Judith Algeo, Esquire (Algeo). After careful review, we dismiss Hospital's appeal in part, affirm the award of a new trial, and vacate the order awarding fees to the guardian *ad litem*.

We adopt the facts and procedural history set forth in the trial court's opinion. Trial Court Opinion, 8/10/15, at 1-7. Briefly, Scott brought this medical malpractice action against Doctors and Hospital, alleging that they were negligent during her birth. This negligence resulted in permanent injuries, including a hypoxic brain injury, cerebral palsy, and blindness. On September 24, 2014, after a four-week jury trial, the jury found Dr. Harvey negligent, but found that her negligence did not increase the risk of harm to

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Doctors' appeal was docketed at 1140 EDA 2015, and Hospital's appeal was docketed at 1306 EDA 2015. This Court *sua sponte* consolidated the appeals because they involve related issues and parties. *See* Pa.R.A.P. 513 (permitting *sua sponte* consolidation).

- 2 -

Scott. The jury found the remaining Appellants not negligent. On October 3, 2014, Scott timely filed a post-trial motion for a new trial. On October 9, 2014, Hospital filed a post-trial motion for judgment notwithstanding the verdict (JNOV). On March 31, 2015, the trial court filed an order granting Scott's motion for post-trial relief, but the court did not serve that order until April 10, 2015. On April 15, 2015, Doctors filed a timely notice of appeal.[2] Subsequently, on April 28, 2015, Hospital filed its timely notice of appeal.[3]

On appeal, Hospital raises the following issues for our review.

> 1. Is a Hospital entitled to a JNOV on [Appellee's] claim of Hospital ostensible liability for the conduct of [Appellant] physicians where there is no evidence that the Hospital did anything to "hold out" to the patient that the physicians its [sic] agents; where there is no evidence that the patient ever believed or thought, in fact, that the physicians were Hospital agents; and where any such mistaken thought would have been unreasonable and unjustified, because physician communications to the patient would have informed any reasonable person that the physician was not a Hospital employee?

> 2. On a contention that a nurse mis-interpreted external fetal monitoring strips, is the nurse entitled to a JNOV where the discharging physician based her discharge decision on her own review of the strips, her own assessment of the clinical data, all independent of the nurse, with

---

[2] **See In re L.M.**, 923 A.2d 505, 508-509 (explaining appeal period does not begin to run until the trial court gives Pa.R.C.P. 236(b) notice of the entry of an order).

[3] Appellants and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

whom she did not even discuss the EFM strips, and thus there was no evidence that any nurse conduct had any causal relation to the physician's decision to discharge the patient from the Hospital?

3. Should a new trial be ordered on the basis of the collateral source of payment rule, where there was no evidence of any collateral source of payment of the child's medical expenses received at trial, and the only time the jury was told about this was during the court's charge to jury, to which [Appellee's] counsel explicitly agreed as proper?

4. Should a new trial be ordered on the basis of "fundamental unfairness" of allegedly objectionable questions asked by counsel, where any objections thereto were sustained, no requests for curative instructions were made, no motion for mistrial was ever made, and the court has not identified any error in its rulings below?

Hospital's Brief at 2-4.

Further, Doctors present the following issues for our review.

1. Whether any of the conduct of defense counsel mentioned by the trial court is sufficient to justify the award of a new trial, where all questions were properly related to admissible evidence and/or where all objections thereto were waived[?]

2. Whether the questions concerning damages incurred by [Appellee] were in violation of the collateral source rule, in a manner justifying a new trial[?]

3. Whether [Appellants] can be forced to pay for minor, incapacitated [Appellee's] guardian *ad litem*'s fees, and whether the claim for those fees is proper where both the hourly rate and the time incurred are unreasonable and excessive, and the services compensated are not compensable as guardian *ad litem* services[?]

Doctors' Brief at 4.

Hospital's first two issues challenge the denial of its post-trial motion for JNOV.[4] In its motion for JNOV, Hospital admits "this is a wholly protective motion filed by verdict winners." Brief of Hospital in Support of Cross-Motion for Post-Trial Relief, 1/30/15, at 3. Hospital was the prevailing party at trial because the jury returned a verdict in its favor, finding no negligence. Nonetheless, Hospital contends that because the trial court granted a new trial, it should have considered Hospital's motion for JNOV. *Id.* Hospital argues it is entitled to JNOV because Scott did not present evidence at trial that made out a claim against Hospital. *Id.* at 14. However, in awarding a new trial to Appellee, the trial court vacated the jury's verdict. The award of a new trial did not resolve the case in favor of

_____

[4] Even though the trial court did not expressly dispose of Hospital's post-trial motions, Hospital's October 9, 2014 post-trial motions were denied by operation of law after 120 days, on February 6, 2015. *See Morningstar v. Hoban*, 819 A.2d 1191, 1195 (Pa. Super. 2003) (explaining that "[Pennsylvania] Rule [of Civil Procedure] 227.4(b) recognizes that post-trial motions may be deemed resolved when the trial court does not enter an order disposing the motions within 120 days[]"), *appeal denied*, 844 A.2d 553 (Pa. 2004). Typically, when post-trial motions are denied by operation of law, a party may praecipe for entry of judgment to obtain a final, appealable order. *See id.* at 1195-1196 (noting a party's right to praecipe for judgment after post-trial motions have been pending for more than 120 days); Pa.R.C.P. 227.4(b) (authorizing the prothonotary to enter judgment upon praecipe of any party when the trial court does not dispose of post-trial motions within 120 days). However, in this case, because the trial court awarded a new trial in Appellee's favor, Hospital could not praecipe for the entry of judgment against itself and in favor of Appellee. Therefore, because Hospital's motion for JNOV was denied by operation of law, we decline to quash Hospital's appeal.

either Scott or Hospital, and it did not enter a verdict in favor of Scott nor confirm the verdict in favor of Hospital. Therefore, any issues in Hospital's motion for JNOV are premature until the conclusion of the new trial.[5]

Hospital's final two issues and Doctors' first two issues challenge the award of a new trial. Initially, Appellants argue Scott waived the request for a new trial by not moving for a mistrial during trial when the trial court sustained her objections to Appellants' improper questions. Hospital's Brief at 48; Doctors' Brief at 13. However, a trial court may *sua sponte* grant a new trial if sufficient cause exists. ***See Armbruster v. Horowitz***, 813 A.2d 698, 704 n.6 (Pa. 2002) (noting "a trial judge has the power to grant a new trial *sua sponte* if [the trial judge] determines that the interests of justice so require[]") (citations omitted); ***Commonwealth v. Powell***, 590 A.2d 1240, 1245 (Pa. 1991) (affirming a trial court's *sua sponte* award of a new trial following the jury verdict and stating "[w]here it will result in the attainment of justice, a trial court may grant a new trial without the initiation of the defendant[]") (citations omitted); ***Getz v. Balliet***, 246 A.2d 108, 110 (Pa. 1968) (noting "[i]t has long been established that if sufficient cause exists, a court may grant a new trial *sua sponte*[]"), *citing* ***Trerotola v. City of Phila.***, 29 A.2d 788 (Pa. 1943); ***Read v. Shu***, 615 A.2d 109, 110 (Pa. Super. 1992) (affirming trial court's *sua sponte* award of new trial due to the

---

[5] We note that after the new trial, Hospital may file post-trial motions.

- 6 -

inadequacy of the jury's damages award). Because the trial court has the inherent authority to order a new trial, a party's actions cannot waive the trial court's exercise of that power. Therefore, Scott did not waive this issue.

On the merits of Hospital's and Doctors' issues relating to the award of a new trial, we adopt the thorough and well-reasoned opinion of the Honorable Robert J. Mellon. Therein, Judge Mellon details "[t]he cumulative effect of [Appellants'] conduct[, which] created insurmountable and undue prejudice towards [Appellee.]" Trial Court Opinion, 8/10/15, at 10. Specifically, during the four-week jury trial, Appellants' improper questioning forced the trial court to issue at least 23 warnings to Appellants "regarding their incessant attempts to elicit inadmissible and prejudicial testimony." *Id.* at 24. Further, the trial court concluded that "despite its numerous warnings and instructions, [Appellants'] conduct caused the jury to speculate about other alleged causes of injury through inadmissible evidence **which resulted in a verdict for [Appellants]**." *Id.* (emphasis added). The trial court was in the best position to view how the repeated prejudicial questioning influenced the jury, and we give great deference to the trial court's observations. Judge Mellon concluded that "where [Appellants] intentionally violated pre-trial orders, **the only remedy is a new trial**, in order to promote fundamental fairness, to ensure professional respect for the rulings of the trial court, to guarantee the orderly administration of

justice, and to preserve the sanctity of the rule of law."[6]  ***Id.*** (emphasis in original).

The trial court's August 10, 2015 opinion fully and accurately disposes of Hospital's and Doctors' issues on appeal.  The trial court did not abuse its discretion in awarding a new trial in the interests of justice.  ***See Powell***, ***supra***.  Therefore, we affirm the trial court's order granting a new trial.

In Doctors' third issue, they contend that the trial court erred in directing them to pay one-third of the guardian *ad litem*'s fees.[7]  Doctors' Brief at 51.  Scott responds that the trial court appointed Algeo at Appellants' request, over Scott's opposition.  Scott's Brief at 52-53.

The award of fees to a guardian *ad litem* implicates the Pennsylvania Rules of Civil Procedure.  "Issues regarding the operation of procedural rules of court present us with questions of law.  Therefore, our standard of review is *de novo* and our scope of review is plenary."  ***Green Acres Rehab. & Nursing Ctr. v. Sullivan***, 113 A.3d 1261, 1267-1268 (Pa. Super. 2015) (citations and internal quotation marks omitted).

_____

[6] After Appellants' egregious disregard for the trial court's repeated instructions and rulings, their assertions of waiver, and justification of their actions are disingenuous.

[7] The trial court also ordered Scott to pay one-third of Algeo's fees and Hospital to pay the remaining one-third.  Hospital did not appeal the award of guardian *ad litem* fees.

"A guardian *ad litem* is appointed by the court to represent a minor child in particular litigation. The function of the guardian is to represent and protect unrepresented minors and their interests." **C.W. v. K.A.W.**, 774 A.2d 745, 748-749 (Pa. Super. 2001) (citations omitted). Pennsylvania Rule of Civil Procedure 2039 provides that a guardian for a minor party in a case may be compensated upon the completion of the case as follows.

> **Rule 2039. Compromise, Settlement, Discontinuance and Distribution**
>
> …
>
> (b) When a compromise or settlement has been so approved by the court, or when a judgment has been entered upon a verdict or by agreement, the court, upon petition by the guardian or any party to the action, shall make an order approving or disapproving any agreement entered into by the guardian for the payment of counsel fees and other expenses out of the fund created by the compromise, settlement or judgment; or the court may make such order as it deems proper fixing counsel fees and other proper expenses. …

Pa.R.C.P. 2039(b).

Because Rule 2039(b) authorizes payment only when a compromise, settlement, or judgment has been reached, the trial court's order directing payment of the guardian *ad litem*'s fees was premature. **See id.** The Rule does not permit a guardian *ad litem* to recover fees when the case is still pending, as when a new trial is ordered. **See id.** Therefore, the trial court

erred as a matter of law in awarding guardian *ad litem* fees at this stage, and we vacate that order.[8]  ***See Sullivan***, ***supra***.

Based on the foregoing, we dismiss Hospital's appeal in part as premature.  Further, we affirm the trial court's April 10, 2015 order awarding a new trial.  Finally, we vacate as premature the December 26, 2014 order awarding fees to the guardian *ad litem*.

Appeal 1306 EDA 2015 dismissed in part.  April 10, 2015 order affirmed.  December 26, 2014 order vacated.

Judge Shogan joins the memorandum.

Justice Fitzgerald files a concurring and dissenting statement.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/21/2016

_____

[8] Our decision is without prejudice to the right of the guardian *ad litem* or any party to petition for fees under Rule 2039 upon the entry of a compromise, settlement, or judgment.

- 10 -

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

CIVIL ACTION

| | |
|---|---|
| Jenna Marie Scott, by and through her Guardian Ad Litem, Judith Algeo, Esquire : | |
| vs. : | No. 2010-01193 |
| Lower Bucks Hospital, Amy L. Harvey, M.D., Mark D. Kuhn. M.D., Dr. Pallume, Laura Castner, R.N., Mary Boyle, R.N., and Joann Butrica, R.N. : | |

## OPINION

Defendants appeal from the Grant of Plaintiff's Motion for a New Trial. The Court Granted Plaintiff's Motion because of Defendants numerous intentional attempts to introduce speculative and prejudicial evidence in violation of the Court's Orders and Pennsylvania Law. This case is a medical malpractice action brought by Plaintiff Jenna Marie Scott, by and through her Guardian Ad Litem, Judith Algeo, Esquire ("Plaintiff"), wherein Plaintiff alleges that Jenna Marie Scott suffered severe, permanent and profoundly disabling injuries during her birth due to Defendants' failure to promptly deliver her in the fact of evident distress. Jenna's injuries include a hypoxic brain injury, cerebral palsy and blindness.

On August 28, 2014, a jury trial commenced in the Bucks County Court of Common Pleas.

On September 24, 2014, after four weeks of trial, the jury returned a verdict in favor of Defendants. Specifically, the jury found Defendant Amy L. Harvey, M.D. negligent (11-1), but that her negligence did not increase the risk of harm to Jenna. The jury found Defendants Mark

A.1

D. Kuhn, M.D, Laura Castner, R.N., Jo Ann Butrica, R.N. and Mary (Boyle) Romolini, R.N. not negligent.

On October 3, 2014, Plaintiff filed a Motion for Post-Trial Relief. On March 24, 2015, the Court Granted Plaintiff's Motion for Post Trial Relief, granting Plaintiff a new trial because Plaintiff was insurmountably prejudiced through Defendants' willful and intentional creation of a fundamentally unfair trial.[1]

On April 15, 2015, Amy L. Harvey, M.D. and Mark D. Kuhn, M.D filed their Notice of Appeal to the Pennsylvania Superior Court. On April 28, 2015, the Defendants Lower Bucks Hospital, Laura Castner, R.N., Jo Ann Butrica, R.N. and Mary (Boyle) Romolini, R.N (the "Hospital Defendants") filed their Notice of Appeal to the Pennsylvania Superior Court. On May 18, 2015, the above appeals were Consolidated *Sua Sponte* by the Superior Court. This opinion follows pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).[2]

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of February 11, 2008, Jennifer Soco Scott was admitted to Lower Bucks Hospital (the "Hospital") with a term pregnancy and complaining of labor pains at approximately 5:00 a.m.[3] Mark D. Kuhn, M.D ("Dr. Kuhn") was the obstetrician assigned to Jennifer Soco Scott's care when she was admitted to the Hospital.[4] Upon admittance to the Hospital Jennifer Soco Scott's contractions were two (2) to three (3) minutes apart and her cervix was one (1) cm dilated and 50% effaced.[5] Plaintiff alleges that during Jennifer Soco Scott's morning admission,

---

[1] Notes of Testimony (hereinafter "N.T."), 3/24/15, 91:2-3 ("Therefore on the issue of a new trial, I am granting a new trial.").
[2] "Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process." Commonwealth v. Seibert, 799 A.2d 54, 62 (Pa. Super. 2002).
[3] N.T., 9/11/14, 3-13.
[4] N.T., 9/5/14, 6:16-21.
[5] N.T., 9/4/14, 32-52. 9/5/14, 39-57, 9/9/14, 56-62, 9/16/14, 129-152, 9/17/14, 114-129.

2

the fetal monitoring strips showed episodes of diminished variability and deceleration in the fetal heart rate, which warranted closer monitoring.[6] Defendants failed to further investigate the fetal decelerations.[7]

Dr. Kuhn ordered a tocolytic, Terbutaline, for Jennifer Soco Scott to determine whether she was in true labor.[8] After the administration of the Terbutaline, Jennifer Soco Scott continued to show evidence of uterine contractions consistent with labor.[9]

At approximately 10:00 a.m., Amy L. Harvey, M.D ("Dr. Harvey") assessed Jennifer Soco Scott with Dr. Kuhn; Dr. Harvey then took over Jennifer Soco Scott's care.[10] At approximately 1:00 p.m. Dr. Harvey discharged Jennifer Soco Scott from Lower Bucks Hospital and told Jennifer Soco Scott and her family that she was not in labor, but to return when her contractions were four (4) to five (5) minutes apart.[11] Dr. Harvey and Dr. Kuhn agreed that instead of being given medication to attempt to stop labor, Jennifer Soco Scott could have delivered Jenna during the morning admission.[12] At the time Dr. Harvey discharged Jennifer Soco Scott from Lower Bucks Hospital, there were no signs of fetal comprise.[13]

On the evening of February 11, 2008, Jennifer Soco Scott returned to Lower Bucks Hospital around 9 p.m.[14] Mary (Boyle) Romalini, R.N. ("Nurse Romalini") and Joann Butrica, R.N. ("Nurse Butrica") were responsible for the care of Jennifer Soco Scott when she was readmitted to Labor and Delivery at Lower Bucks Hospital.[15] Plaintiff's expert testified that

---

[6] N.T., 9/4/14, 47-128, 9/9/14, 121-123.
[7] N.T., 9/2/14, 297-303, 99/11/14, 63-65, 9/16/14, 163.
[8] N.T., 9/5/14, 56-57.
[9] N.T., 9/5/14, 62.
[10] N.T., 9/5/14, 75:4-9.
[11] N.T., 9/11/14, 42-45.
[12] N.T., 9/5/14, 44-47, 9/11/14, 6, 10-14.
[13] N.T., 9/5/14, 113:22-25, 9/17/14 85-84.
[14] N.T., 9/3/14, 124-145.
[15] N.T., 9/3/14, 197:19-25.

3

upon Jennifer Soco Scott's return to the Hospital, the fetal monitoring strips immediately showed evidence of fetal distress, however, Nurse Burtica and Nurse Romalini failed to appreciate the significance of the findings.[16] Plaintiff's expert testified that despite the evidence of decelerations, Jenna was able to repeatedly recover her heart rate.[17]

Dr. Harvey was notified of Jennifer Soco Scott's admission to Labor and Delivery shortly after her readmission, between 9:13 p.m. and 9:16 p.m.[18] Dr. Harvey testified that she believed she arrived at Labor and Delivery shortly after she was notified of Jennifer Soco Scott's admission, but Nurse Romalini testified that at 9:29 p.m. she was still waiting for Dr. Harvey to arrive.[19]

Dr. Harvey called for a non-urgent C-section at approximately 9:49 p.m.[20] Dr. Harvey called for an emergency C-section between 9:57 p.m. and 10:03 p.m.[21] Jenna Marie Scott ("Jenna") was delivered at 10:20 p.m.[22]

When Jenna was delivered she had no heartbeat and was not breathing.[23] Jenna suffered an abrupt hypoxic brain injury occurring at or about the time of her birth and her injuries include cerebral palsy and blindness.[24] Jenna now resides at KenCrest, a full-time residential care facility for children.[25] Jenna is unable to speak and is entirely dependent on other people for her care.[26] Jenna is a spastic quadriplegic, she has some control over her arms and legs, but does not

---

[16] N.T., 9/9/14, 147-152.
[17] N.T., 9/9/14. 153-179, 9/16/14, 223-234.
[18] N.T., 9/3/14, 130:5-9, 190:11-14.
[19] N.T., 9/11/14, 82:5-7, 9/3/14, 212:11-15.
[20] N.T., 9/11/14, 97:4-12.
[21] N.T., 9/11/14,79:6-14.
[22] N.T., 9/11/14, 113.
[23] N.T., 9/11/14, 80-85.
[24] N.T., 9/11/14, 64-66.
[25] N.T., 9/15/14, 8:1-7.
[26] N.T., 9/10/14, 17:21-24.

4

do much purposeful movement of her arms and legs.[27] Jenna is unable to feed herself, all of her nutrition is via a feeding tube inserted into her stomach.[28]

On February 4, 2010, the Plaintiff commenced this lawsuit by and through her legal guardian Jennifer Soco Scott by filing a Complaint in Trespass for Medical Malpractice.

On March 27, 2012, this Court removed Jennifer Soco Scott as Guardian and Judith A. Algeo was appointed as the Guardian *ad Litem* for Jenna.

On October 28, 2013, a jury trial commenced in the Bucks County Court of Common Pleas. On November 4, 2013, the Court declared a mistrial.

On August 28, 2014, a jury trial commenced in the Bucks County Court of Common Pleas.

On September 24, 2014, after four weeks of trial, the jury returned a verdict in favor of Defendants. Specifically, the jury found Dr. Harvey negligent (11-1), but that her negligence did not increase the risk of harm to Jenna. The jury found Defendants Dr. Kuhn, Laura Castner, Jo Ann Butrica and Mary (Boyle) Romolini not negligent.

On October 3, 2014, Plaintiff filed a Motion for Post-Trial Relief.

On October 10, 2014, Dr. Harvey and Dr. Kuhn filed an Answer to Defendants' Motion for Post-Trial Relief.

On October 20, 2014, Hospital Defendants filed a Motion to Strike the Plaintiff's Motion for Post-Trial Relief.

On February 2, 2015, Plaintiff filed a Brief of Law in Support of Plaintiff's Motion for Post-Trial Relief.

---

[27] N.T., 9/10/14, 20:21-24.
[28] N.T., 9/10/14, 10:12-19.

5

On February 4, 2015, Plaintiff filed a Supplemental Brief of Law in Support of Plaintiff's Motion for Post-Trial Relief.

On March 2, 2015, Hospital Defendants filed a Brief in Opposition to Plaintiff's Post-Trial Motion.

On March 2, 2015, Amy L. Harvey, M.D. and Mark D. Kuhn, M.D filed a Brief in Opposition to Plaintiff's Post-Trial Motion.

On March 18, 2015, Plaintiff filed a Reply to Hospital Defendants' Brief in Opposition to Plaintiff's Post-Trial Motion.

On March 18, 2015, Plaintiff filed a Reply to Amy L. Harvey, M.D. and Mark D. Kuhn, M.D's Brief in Opposition to Plaintiff's Post-Trial Motion.

On March 24, 2015, the Court Denied Hospital Defendants' Motion to Strike the Plaintiff's Motion for Post-Trial Relief.

On March 24, 2015, the Court Granted Plaintiff's Motion for Post-Trial Relief, granting Plaintiff a new trial.

On April 15, 2015, Amy L. Harvey, M.D. and Mark D. Kuhn, M.D. filed their Notice of Appeal to the Pennsylvania Superior Court.

On April 24, 2015, the Court ordered Defendants Amy L. Harvey, M.D. and Mark D. Kuhn, M.D. to file a Statement of Errors Complained of on Appeal, no later than twenty-one (21) days from the date of this order.

On April 28, 2015, Hospital Defendants filed their Notice of Appeal to the Pennsylvania Superior Court.

On April 29, 2015, the Court ordered Hospital Defendants to file a Statement of Errors Complained of on Appeal, no later than twenty-one (21) days from the date of this order.

6

A.6

On May 5, 2015, Amy L. Harvey, M.D. and Mark D. Kuhn, M.D. filed a Statement of Matters Complained of on Appeal.

On May 6, 2015, Hospital Defendants filed a Statement of Matters Complained of on Appeal.

On May 18, 2015, the Superior Court *Sua Sponte* Consolidated the above appeals.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Defendants Amy L. Harvey, M.D. and Mark D. Kuhn, M.D. filed a Statement of Errors Complained of on Appeal on May 5, 2015. The Matters Complained of on Appeal as alleged *verbatim* by Defendants Lower Bucks Hospital, Laura Castner, Jo Ann Butrica and Mary (Boyle) Romolini are as follows:

1. Defendants assert that their counsel did not violate any pre-trial or trial ruling of the Court, there was no unfair prejudice to Plaintiff caused by any act of Defendants' counsel, and that Plaintiff's post-trial motions and in oral argument on those motions, which are incorporated herein by reference.

Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Defendants Lower Bucks Hospital, Laura Castner, Jo Ann Butrica, and Mary (Boyle) Romolini filed a Statement of Errors Complained of on Appeal on May 6, 2015. The Matters Complained of on Appeal as alleged *verbatim* by Defendants Lower Bucks Hospital, Laura Castner, Jo Ann Butrica, and Mary (Boyle) Romolini are as follows:

1. In plaintiff's motion for post-trial relief, plaintiff requested a judgment notwithstanding the verdict, although not specifying as to what verdicts, or against what defendants, or on what grounds. Nonetheless the court by its order granting this motion without limitation, and presumably including this requested relief, did so erroneously, again without stating any grounds therefore.

2. Assuming that the court intended to grant a new trial only, the court's order did not specify as to which verdicts or against which parties. To the extent the court intended to order a new trial, as to all parties and verdicts, it did not state any grounds therefore in the order.

7

A.7

3. The court erred in ordering a new trial as to any nurse defendant, all of whom were exonerated from liability by the jury verdict, where the plaintiff's assignments of error in the admission of error in the admission of evidence all related to issues of damages and causation, and did not raise any question as to the veracity of the nurse liability verdicts, or question any of evidence admitted on the issues of nurse liability.

4. The court erred in ordering a new trial as to Dr. Kuhn, who was exonerated from liability by the jury verdict, where the plaintiff's assignments of error in the admission of evidence all related to issues of damages and causation, and did not raise any questions as to the veracity of the Dr. Kuhn's liability verdicts, or question any evidence admitted on the issues of his liability.

5. As to grounds for ordering a new trial as stated by the court during oral argument, namely that some questions asked by the physicians' counsel where in violation of pre-trial rulings, again errors claimed can only be stated herein generally, because the court did not specify which rulings were violated by precisely which questions. The Hospital defendants generally assert error here because the questions either were not in violation of the court pre-rulings and were otherwise proper questions regarding admissible evidence.

6. To the extent the questions were objectionable, the court erred in granting a new trial based thereon, because at trial, whenever an objection was made to such a question, the court sustained the objection, and the evidence was not received or herd by the jury. To the extent an objection was not raised to any offending question, that issue was waived and cannot provide grounds for the court ordering a new trial.

7. To the extent that objectionable questions resulted in the court sustaining the objection, but the court found the posing of the question itself created "fundamental unfairness" which required a new trial, that was in error because in those cases, plaintiff's counsel either did not request a curative or cautionary instruction, or did so and it was granted, but in no case did plaintiff's counsel ever move for a mistrial because the offending question was asked, and therefore any issues thereto has been waived.

8. The court erred in ruling that, without any motion for mistrial made, it can order a new trial for what it characterized as "fundamental unfairness" of questions asked by physicians counsel.

## DISCUSSION

I. The Court Did Not Err in Ordering a New Trial.

"Trial courts have broad discretion to grant or deny a new trial."[29] "The grant of a new trial is an effective instrumentality for seeking and achieving justice in those instances where the

---

[29] Harman ex rel. Harman v. Borah, 756 A.2d 1116, 1121 (Pa. 2000).

8

A.8

original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings."[30]

"The power to grant a new trial lies inherently with the trial court and we will not reverse its decision absent a clear abuse of discretion or an error of law which controls the outcome of the case."[31] In determine whether to grant a new trial "the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. [I]f the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial."[32] "Further, when improperly admitted testimony may have affected a verdict, the only correct remedy is the grant of a new trial."[33]

"[A] trial judge may grant a new trial if he finds that ... improper statements made by counsel may have prejudiced the jury."[34] The Superior Court has "held that when a party intentionally violates a pre-trial order, **the only remedy is a new trial**, in order to promote fundamental fairness, to ensure professional respect for the rulings of the trial court, to guarantee the orderly administration of justice, and to preserve the sanctity of the rule of law."[35] "A motion for a new trial for alleged misconduct or improper remarks of counsel is directed largely to the discretion of the trial judge. Where the remark is obviously prejudicial, it is an abuse of discretion for the court below to refuse a new trial."[36]

---

[30] Id.

[31] Deeds v. U. of Pennsylvania Med. Ctr., 110 A.3d 1009, 1012 (Pa. Super. 2015), reargument denied (Apr. 7, 2015)(citing Maya v. Johnson & Johnson & McNeil–PPC, Inc. (In re McNeill–PPC, Inc.), 97 A.3d 1203, 1224 (Pa.Super.2014)).

[32] Harman ex rel. Harman. 756 A.2d at 1122.

[33] Deeds v. U. of Pennsylvania Med. Ctr., 110 A.3d 1009, 1012 (Pa. Super. 2015), reargument denied (Apr. 7, 2015)

[34] Lee v. S.E. Pennsylvania Transp. Auth., 704 A.2d 180, 183-84 (Pa. Cmmw. 1997)(citations omitted).

[35] Mirabel v. Morales, 57 A.3d 144, 151 (Pa. Super. 2012).

[36] Stevenson v. Pennsylvania Sports & Enterprises, 93 A.2d 236, 240 (Pa. 1952) .

9

### a. Plaintiff is Entitled to a New Trial Because Plaintiff Suffered Insurmountable Prejudice Due to the Cumulative Effect of the Testimony Elicited by Defendants in violation of this Court's Orders.

Throughout the trial Defendants attempted to introduce evidence in violation of the Court's Orders:

1. That the mother's alleged inadequate prenatal care is to blame for Plaintiff's injuries;

2. That baby suffered a speculative brain injury prior to mother's admission to care of Defendants;

3. That the placenta had a chorangioma lesion with no evidence or expert opinion to support this conclusion;

4. That Jennifer Soco Scott intended to give Jenna up for adoption following her birth;

5. That resulted in at least twenty-three (23) warnings and instructions from this Court to Defendants.

Despite the warnings and instructions from this Court, Defendants repeatedly demonstrated a blatant indifference for the rulings of this Court and created an environment that was fundamentally unfair for Plaintiff. This Court finds this trial to be fundamentally unfair due to Defendants' conduct which allowed the jury to hear inadmissible evidence with no evidentiary basis. The conduct by Defendants caused the jury to speculate about other possible causes of the harm to Jenna which resulted in a defense verdict. The cumulative effect of Defendants' conduct created insurmountable and undue prejudice towards Plaintiff and is the reason why a new trial is the only appropriate remedy. Defendants' statements and the testimony elicited through improper questioning was obviously prejudicial, and therefore it would have been an abuse of discretion for this Court to refuse a new trial.

10

A.10

Plaintiff was insurmountably prejudiced through Defendants' willful and intentional creation of a fundamentally unfair trial for the following reasons:

1. Defendants Intentionally Violated the Court's *in Limine* Ruling by Repeatedly Attempting to Blame Plaintiff's Injuries on the Allegedly Inadequate Prenatal Care by Jennifer Soco Scott.

2. Defendants Intentionally Violated the Court's *in Limine* Ruling by Repeatedly Eliciting Inadmissible Testimony Concerning a "Unpredictable Brain Injury."

3. Defendants Intentionally Violated the Court's *in Limine* Ruling by Repeatedly Attempting to Elicit Speculative Testimony that the Placenta had a Chorangioma Lesion.

4. Defendants Intentionally Violated the Court's Rulings by Repeatedly Eliciting Irrelevant Testimony Regarding the Intended Adoption of Jenna.

### 1. Defendants Intentionally Violated the Court's *in Limine* Ruling by Repeatedly Attempting to Blame Plaintiff's Injuries on the Allegedly Inadequate Prenatal Care by Jennifer Soco Scott.

This Court made a clear and precise ruling on Plaintiff's Motion *in limine* to Exclude any Evidence, Reference, Argument, Suggestion and/or Innuendo that Jennifer Soco Scott Received Limited and/or Inadequate Prenatal Care Throughout her Pregnancy with Jenna.

> The Court: To the extent something occurred on a specific date that you want to explore, that's fine. But you can't, for example, you went to the doctor on this date and this date and that's the only doctors that you saw. That would be improper.
> If there's a historical event that occurred on a particular visit, you should reference the visit, not first, second, third or that's all or the only ones, and say on this visit you were given this information and whatever the historical event is, the factual event that's relevant....[37]

> The Court: ....Its scope says, limited to, that you're being precluded with regard to inadequacy and number of prenatal visits and that is granted.[38]

---

[37] N.T., 9/2/14, 21: 7-21.
[38] N.T., 9/2/14, 22-23: 24-25, 1-2 (emphasis added).

11

Defendants willfully ignored the ruling of the Court by repeatedly introducing overwhelming prejudicial evidence to the jury in an attempt to suggest that Plaintiff's injuries were due to a lack of prenatal care.[39] The numerous examples of Defendants' flagrant disrespect for this Court's rulings resulted in an environment which made a fair trial impossible.

"A trial judge may grant a new trial if he finds that improperly admitted evidence or improper statements made by counsel may have prejudiced the jury."[40] When an attorney makes insurmountable prejudicial references, "the only remedy is a new trial, 'in order to promote fundamental fairness, to ensure professional respect for the rulings of the trial court, to guarantee the orderly administration of justice, and to preserve the sanctity of the rule of law.'"[41]

Defendants' deliberate effort to continually introduce speculative, inadmissible evidence was not an isolated incident. Throughout the trial this Court was forced to offer ten (10) instructions and warnings about prenatal care to both the jury and Defendants in its unsuccessful attempt to preserve a fair trial. Defendants' aggravating inability and unwillingness to show the slightest respect for the rulings of this Court resulted in the introduction of prejudicial evidence regarding prenatal care and created a fundamentally unfair situation for Plaintiff.[42] Defendants created a fundamentally unfair trial by attempting to prejudice the Plaintiff by creating an atmosphere through innuendo that Jennifer Soco Scott was comparatively negligent.

Defense counsel violated the Court's ruling on cross-examination of Michael A. Garofalo, Jennifer Soco Scott's cousin by marriage:

> Joan Orsini-Ford, Esq.: And were you aware that she went there on a Saturday night because she had complaints of lack of fetal movement?

---

[39] N.T., 9/8/14, 178, 234-238, 244, 291, 301-309.
[40] Boscia v. Massaro, 529 A.2d 504, 505 (Pa. Super. 1987)(citations omitted).
[41] Mirabel, 57 A.3d at 151 (citations omitted)(emphasis added).
[42] N.T., 9/8/14, 74-75, 178-180, 236, 292, 303-309; 9/19/14, 242-243, 271-276; 9/12/14, 66-67; 9/15/14), 70-72, 89-91.

12

Christine Giordano, Esq.: Objection, Your Honor.

The Court: Sustained.

Michael A. Garofalo: I don't recall that.

The Court: Excuse me, sir. When I say sustained you don't have to answer the question. Okay?

Michael A. Garofalo: Sorry.

The Court: Sustained means don't answer. Ladies and gentlemen, you should disregard that last question because it has nothing to do with what happened on February 11 of 2008.

Joan Orsini-Ford, Esq.: Do you recall why she went to Orange County Regional Medical Center that night?

Christine Giordano, Esq.: Objection, Your Honor.

The Court: Sustained.

Christine Giordano, Esq.: May we see you at side-bar?

The Court: I have already given prior to this examination a cautionary instruction about this. You want to make a motion, feel free, but, otherwise, we'll continue and make your objections and I'll continue to instruct the jury.

Christine Giordano, Esq.: I'd like to make a motion to strike counsel's questions, Your Honor.

The Court: Ladies and gentlemen, you should disregard anything—I think I've said this before—with regard to Orange County Medical Center, other than what's been testified to, that she went there on a date and that an estimated date of delivery was given for the purpose of a cesarean section, because that's the only information that the doctors had in this case at the time of treatment, and there's no allegation otherwise.

Again I'll tell you the focus of this case is what occurred when they arrived at the hospital on February 8, 2008. If the doctors had information, that would be different, but for no fault of their own they didn't have information about Orange County. So we can't suddenly start considering it, because that would be not fair to the doctors or anyone else.[43]

---

[43] N.T., 9/8/14, 178-180.

Despite this warning from the Court, Defendants still persisted in their successful attempt to shape a trial that extremely prejudiced Plaintiff and to create an environment that was fundamentally unfair.

> Joan Orsini-Ford, Esq.: And do you recall that the doctor – she had talked to the doctor about wanting to deliver the baby in New York?
>
> Christine Giordano, Esq.: Objection, Your Honor.
>
> The Court: Sustained. It's not relevant what happened in New York. I previously instructed you.
>
> Christine Giordano, Esq.: Your Honor, I make a motion to strike Ms. Ford's question.
>
> The Court: I just instructed the jury it's not relevant and you should disregard it.[44]

Defendants once again attempted to elicit extremely prejudicial testimony and once again this Court was forced to offer instructions to the jury during their cross-examination of Michele Garofalo, Jennifer Soco Scott's cousin.

> Joan Orsini-Ford, Esq.: When Jennifer visited with you she had the typical complaints of a woman at an advanced stage of pregnancy, correct?
>
> Christine Giordano, Esq.: I'm going to object to it, Your Honor.
>
> The Court: Sustained.
>
> Michele Garofalo: I would imagine they are –
>
> The Court: Excuse me, ma'am. You don't have to answer that question.
>
> Michele Garofalo: Sorry.
>
> Joan Orsini-Ford, Esq.: Did you talk to any doctors in New York about scheduling this C-section date?
>
> Michele Garofalo: Not that I recollect.
>
> Christine Giordano, Esq.: Objection. Your Honor.

---

[44] N.T., 9/8/14, 235:24-236:1-11.

The Court: She's already answered it.

Joan Orsini-Ford, Esq.: And when Jennifer—when you brought Jennifer back to her home in the Philadelphia area in early February of 2008, did you have an understanding as to when the baby was due?

Christine Giordano, Esq.: Objection Your Honor.

The Court: Sustained. Ladies and gentlemen, I've given you multiple instructions on this issue. I don't think I need to say it again, but you can disregard any testimony about anything that occurred, medical findings, anything else before the date of delivery, because the test in this case is what did these physicians know when treating the child and the mother. That's the test. Not what other people knew. What they knew.[45]

Following Defendants' relentless attempts to circumvent the rulings of this Court and elicit insurmountably prejudicial testimony, this Court removed the jury from the courtroom and strictly reminded the Defendants that their actions were in direct violation of the Court's many previous rulings.

Joan Orsini-Ford, Esq.: Do you know how many times Jennifer had seen a doctor at Middletown Community Hospital?

The Court: Ladies and gentlemen, will you leave us for a moment, please.

***

(The jury withdraws from the courtroom.)

***

The Court: Counsel for plaintiff, anything you want to add?

Christine Giordano, Esq.: I have an objection, Your Honor, and a motion to strike.

Joseph L. Messa, Jr., Esq.: But Your Honor –

The Court: Ms. Ford, could you please tell me if you are having some difficulty understanding my orders – have a seat everyone – with regard to the prenatal issue that you in my view right now are in direct violation of multiple orders about the time or the frequency of visits of prenatal care?[46]

---

[45] N.T., 9/8/14, 291:9-25-292:1-21.
[46] N.T., 9/8/14, 302:21-303:1-16.

15

Defendants intentionally violated the Court's previous rulings and this strict warning later in their examination:

> Joan Orsini-Ford, Esq.: Did you think that it would be relevant to your opinions to review any of the prior treatment records?
>
> Joseph L. Messa, Jr., Esq.: Objection, Your Honor.
>
> The Court: Sustained. Ladies and gentlemen, we've been over this issue of prior treatment. It's just not relevant.[47]

Defendants' disrespectful conduct throughout the trial in blatantly disregarding this Court's orders on the Motion *in limine* to Exclude any Evidence, Reference, Argument, Suggestion and/or Innuendo that Jennifer Soco Scott Received Limited and/or Inadequate Prenatal Care Throughout her Pregnancy with Jenna insurmountably prejudiced Plaintiff. As a result of the extremely prejudicial and fundamentally unfair trial deliberately created by Defendants, the only remedy is to grant Plaintiff a new trial.

### 2. Defendants Intentionally Violated the Court's *in Limine* Ruling by Repeatedly Eliciting Speculative Testimony Concerning an "Unpredictable Brain Injury" Before Jennifer Soco Scott's Re-admission to Lower Bucks Hospital.

Defendants directly violated this Court's pretrial ruling granting Plaintiff's Motion *in Limine* to Preclude Defendant's Expert, Andrew Gerson, M.D. from Offering Unsubstantiated, Speculative and Misleading Testimony at the time of Trial that is Beyond the Scope of His Expertise. This Court clearly ruled that this neurological testimony from an obstetrician would be outside his or her area of expertise and therefore was not admissible during trial.[48] On this issue the Court was forced to admonish Defendants two times as a result of their attempt to elicit testimony that would unduly prejudice Plaintiff. Defendants continued their conscious decision

---

[47] N.T., 9/12/14AS, 66:19-25-67:1-2.
[48] N.T., 9/2/14, 62-66.

16

A.16

to ignore the rulings of this Court and elicited inadmissible testimony that had no evidentiary basis.[49] Throughout this testimony Defendants continued their aggressive effort to insurmountably prejudice Plaintiff and to form an environment in which this Court could not maintain a fair trial.

Defense counsel elicited the following prejudicial testimony from her obstetrics and gynecology expert, Andrew G. Gerson, M.D. ("Dr. Gerson").

> Joan Orsini-Ford, Esq.: And, Doctor, do you have an opinion to a reasonable degree of medical certainty as to whether earlier delivery would have changed this outcome?
>
> Joseph L. Messa, Jr., Esq.: Objection.
>
> The Court: He can give an obstetrical opinion.
>
> Joseph L. Messa, Jr., Esq.: Yes, Your Honor.
>
> Dr. Gerson: The time frame from when the decision was made to deliver to delivery wouldn't have impacted if the delivery had occurred earlier, quicker.
>
> Joan Orsini-Ford, Esq.: I'm sorry. I –
>
> Dr. Gerson: I said that I do have an opinion. The time frame from decision to incision, delivery of the baby, the condition of the baby wouldn't have changed. We know the baby had a cord pH of 6.79, I believe.
>
> Joseph L. Messa, Jr., Esq.: Objection, Your Honor. Now he's definitely getting out of his area of expertise.
>
> The Court: Well, I'm going to sustain the objection. Also, I don't believe that is in his report. So go ahead.[50]

Defendants once again blatantly violated the rulings of this Court and elicited similar prejudicial and inadmissible evidence in their cross examination of Plaintiff's expert in neonatology, Andrew M. Steele, M.D. ("Dr. Steele").

---

[49] N.T., 9/17/14, 107; 9/12/14AS, 85.
[50] N.T., 9/17/14, 107:16-108:16.

17

Joan Orsini-Ford, Esq.: I believe, according to your testimony, you said that you could rule out certain things. Is that correct, as I understood your testimony.

Dr. Steele: I did say that the baby did not have any evidence of infection, did not have a metabolic disorder and did not have any brain malformations identified.

Joan Orsini-Ford, Esq.: And in your report you note that there's no evidence of coagulation disorder, infectious conditions or genetic disorders, correct?

Dr. Steele: That's correct.

Joan Orsini-Ford, Esq.: And, in fact, in your review of the records did you note that there was recommendation for genetic testing?

Mr. Steele: Yes.

Joan Orsini-Ford, Esq.: And did you see any evidence of that testing done?

Joseph L. Messa, Jr., Esq.: Objection, Your Honor. Really –

The Court: Do you have a good-faith basis for this question, Counsel?

Joan Orsini-Ford, Esq.: I just want to establish –

The Court: Do you have a good-faith basis for this question?

Joan Orsini-Ford, Esq.: Yes, there's no – it was not completed.

Joseph L. Messa, Jr., Esq.: Judge, I would ask for move to strike and ask for instruction. I mean, really, this has been repetitive and there's nobody that says anything about this or evidence of it.

The Court: The objection is sustained. There has to be a good-faith basis for these questions.[51]

The Court clearly ruled that it found the testimony shown above to be speculative in nature and therefore inadmissible during the trial. However, Defendants once again demonstrated a flagrant intent to violate the pretrial rulings made by this Court. Despite every effort of this Court, the conduct of Defendants led to the introduction of overwhelming

---

[51] N.T., 9/12/14, 84-85: 9-25, 1-20.

18

prejudicial evidence to the jury. Therefore, in order to promote fundamental fairness and to ensure professional respect for the rulings of the trial court Plaintiff must be granted a new trial.

### 3. Defendants Intentionally Violated the Court's *in Limine* Ruling by Repeatedly Attempting to Elicit Speculative Testimony that the Placenta had a Chorangioma Lesion.

Plaintiff filed a Motion *in limine* to Preclude the Testimony of Carolyn Salafia, M.D. at Trial on the Issue of Jenna Scott's Neonatal Outcome as Incompetent and Speculative. This Court ruled that Carolyn Salafia, M.D.'s ("Dr. Salafia") testimony would be limited to her area of expertise as a placental pathologist.[52] Defendants continued to aggravate this Court by ignoring its rulings and three warnings and instructions in regards to this issue.[53] The Defendants' intentional violations of this Court's rulings contributed to the environment of severe prejudice for Plaintiff and to the fundamental unfairness of this trial. In their examination of Dr. Salafia, Defendants purposefully attempt to elicit prejudicial evidence.

> Joan Orsini-Ford, Esq.: Doctor, in your report you note that there is an area inside A3 and A4 that contain the hemorrhagic area. And is that the chorangioma that you were showing us?
>
> Dr. Salafia: Yes.
>
> Joan Orsini-Ford, Esq.: and you state that histologically this is a lobulated chorangioma with congestion, but no hemorrhage or necrosis appreciated in the samples. What specifically does that mean?
>
> Ms. Salafia: These tumors can rupture because the flow is not normal. And they can bleed—
>
> Joseph L. Messa, Jr., Esq.: Your Honor, I object. This tumor did not rupture, so she's just talking about something that is not here.
>
> Joan Orsini-Ford, Esq.: She's explaining her report, Your Honor.

---

[52] N.T., 9/2/14, 53-58.
[53] N.T., 9/10/14am, 80, 93-95; 9/18/14, 192-196.

19

Joseph L. Messa, Jr., Esq.: She said they can rupture. They didn't happen here.

The Court: You're just giving us a general background at this point in time, ma'am?

Dr. Salafia: I'm just saying – she asked me to explain what not necrotic meant and I was trying to do that.

The Court: So you're not saying that what you're testifying about has any particular findings in this case.

Dr. Salafia: This is entirely living tumor mass. There is not any part of this tumor mass that's dead.

Joan Orsini-Ford, Esq.: And Dr. Salafia, let me ask you, in terms of the fact that this was a living tumor and it had not died, what significance does that have?

Joseph L. Messa, Jr., Esq.: Again, objection, Your Honor.

Joan Orsini-Ford, Esq.: It's with regard to placental pathology.

The Court: Excuse me, excuse me. To the extent we need a general background, Doctor, please make sure you're differentiating between things you say that could happen and what happened in this case. Okay?[54]

Defendants intentionally raised this issue again in their examination of Dr. Salafia as

Defendants continued to introduce speculative and misleading evidence to the jury.

Joan Orsini-Ford, Esq.: Doctor, are chorangiomas common?

Dr. Salafia: No.

Joan Orsini-Ford, Esq.: And are they associated with certain outcomes?

Joseph L. Messa, Jr., Esq.: Objection.

The Court: Sustained.

Joan Orsini-Ford, Esq.: It's in the report, Your Honor.

The Court: It goes beyond her areas of expertise. She's already – and her report acknowledges that.

Joan Orsini-Ford, Esq.: That was not stricken, Your Honor.

---

[54] N.T., 9/18/14, 182-183: 4-25, 1-22.

20

The Court: Ladies and Gentlemen, will you leave us for a few minutes, please.[55]

This speculative testimony directly contributed to the insurmountable prejudice that faced Plaintiff as a result of the flagrant conduct of Defendants. Defendants willfully brought further prejudicial evidence to the jury's attention in their direct examination of Dr. Gerson.

Joan Orsini-Ford, Esq.: And did you see that there was evidence of a chorangioma?

Joseph L. Messa, Jr., Esq.: Objection.

The Court: Sustained. It's not in his report.[56]

Defendants intentionally elicited prejudicial evidence in violation of this Court's ruling on Plaintiff's Motion *in limine* to Preclude the Testimony of Carolyn Salafia, M.D. at Trial on the Issue of Jenna Scott's Neonatal Outcome as Incompetent and Speculative which limited her testimony to her area of expertise as a placental pathologist. Through the elicitation of this testimony, Defendants deliberately prejudiced Plaintiff and left the Court's only remedy to be the grant of a new trial.

### 4. Defendants Intentionally Violated the Court's Rulings by Repeatedly Eliciting Irrelevant Testimony Regarding the Intended Adoption of Plaintiff.

Plaintiff filed a Motion *in limine* to preclude the mention of the planned adoption of Jenna Marie Scott. This Court originally denied Plaintiff's Motion *in limine* to Preclude Any and All Evidence Relating to the Potential Adoption of Plaintiff Jenna Marie Scott.

Mr. Messa: However, it can be viewed the other way. And it can be viewed in a way that is negative towards the mother, towards this child, and it goes to zero, no issue in this case—

The Court: I would imagine that you'll take care of it, because this motion is denied and you can argue adoption any way you want. Besides there's the historical fact it could go to bias, and the probative value on bias, I still don't understand the

[55] N.T., 9/18/14b, 188: 8-23.
[56] N.T., 9/17/14, 108-109: 24-25, 1-3.

21

prejudice that it would outweigh the bias or outweigh the probative value. So therefore this motion is denied.[57]

This Court originally denied this Motion for it did not foresee the intentions of Defendants in this trial. Defendants did not intend to use the issue of adoption as a "probative value on bias," instead they elicited testimony with the sole purpose of further prejudicing Plaintiff. As Defendants' intention became clear during the course of the trial, this Court changed its position and began ruling against the inclusion of this issue. This Court admonished Defendants two times against using this issue.[58] Despite these clear warnings, Defendants continued their flagrant conduct in ignoring the rulings and warnings of this Court. Defendants utilized the issue of adoption in a wrongful manner to create an environment that was fundamentally unfair by attempting to discredit Jennifer Soco Scott through prejudicial evidence and innuendo:

> Joan Orsini-Ford, Esq: I want to ask you a little bit about some of your recollections. You went home from Virginia to New York when you knew that your parents were going to adopt a baby, correct?
>
> Allison Knueppel: I came to visit my parents.[59]
>
> ***
>
> Joan Orsini-Ford, Esq: And do you recall that the doctor—she had talked to the doctor about wanting to deliver the baby in New York?
>
> Christine Giordano, Esq.: Objection, Your Honor.
>
> The Court: Sustained. It's not relevant what happened in New York. I previously instructed you.
>
> Christine Giordano, Esq.: Your Honor, I make a motion to strike Ms. Ford's question.

---

[57] N.T., 9/2/14, 48-49: 12-25, 1.
[58] N.T., 9/8/14, 290-291; 9/17/14, 59-60.
[59] N.T., 9/8/14, 233: 16-20.

22

A.22

The Court: I just instructed the jury it's not relevant and you should disregard it.[60]

Defendants continued their blatant and persistent attempt to insurmountably prejudice Plaintiff further later during the trial:

Joan Orsini-Ford, Esq: and the thought was that it would be an open adoption, so that Jennifer would have the ability to see the baby, correct?

Michele Garofalo: Absolutely.

Joan Orsini-Ford, Esq: And when you first were approached you had no idea when the baby was due, is that right?

Michele Garofalo: I didn't have a due date, no.

Joan Orsini-Ford, Esq: And would I be correct that when Jennifer was with you in New York she couldn't tell you what her due date was?

Christine Giordano, Esq.: Objection, Your Honor.

The Court: I don't know the relevance of it, but did she tell you the due date?

Michele Garofalo: She didn't give me a due date, no.

Joan Orsini-Ford, Esq: And your hope was that the baby would be able to delivered in New York, is that correct?

Michele Garofalo: That was my hope.

Christine Giordano, Esq.: Objection Your Honor.

The Court: Sustained. Counsel, this has nothing to do with anything of what her hope is.[61]

It became apparent to this Court that the purpose of the elicitation of this testimony was simply to cast a negative and extremely prejudicial light over Plaintiff. This Court found this type of conduct by Defendants to be unacceptable. Again, this Court was forced to issue warnings to Defendants as to what was relevant and not relevant to this case:

Joan Orsini-Ford, Esq: Yes. There's the issue of the adoption. She—

_____

[60] N.T., 9/8/14, 235:25-236:11.
[61] N.T., 9/8/14, 289-:25-290: 25.

23

A.23

The Court: There's absolutely no issue of adoption.

Joan Orsini-Ford, Esq: She made the arrangements—

The Court: I made pre-trial rulings on that—and this is the difficulty I'm having. I've made rulings and you continue and repeatedly continue to avoid them and try to go around them and circumvent them, which is why I always ask do you have a good-faith basis. Adoption is out.[62]

Like most of the testimony elicited by Defendants through their conduct during this trial, this irrelevant evidence heard by the jury played no role other than prejudicing Plaintiff. This Court gave Defendants an opportunity to use the issue of adoption for its probative value on bias and Defendants intentionally misused this opportunity to create an environment of complete fundamental unfairness for Plaintiff.

Throughout this trial the Court attempted to preserve an environment that was fair for all parties of the case. This Court gave at least twenty-three (23) warnings to Defendants regarding their incessant attempts to elicit inadmissible and prejudicial testimony. This Court finds that despite its numerous warnings and instructions, Defendants' conduct caused the jury to speculate about other alleged causes of injury through inadmissible evidence which resulted in a verdict for the Defendants. Defendants' willful and incessant violations of the many rulings of this Court insurmountably prejudiced Plaintiff. As a result of Defendants flagrant conduct, this Court's only remedy is to grant Plaintiff a new trial. Here, where the Defendants intentionally violated pre-trial orders, the only remedy is a new trial, in order to promote fundamental fairness, to ensure professional respect for the rulings of the trial court, to guarantee the orderly administration of justice, and to preserve the sanctity of the rule of law.

---

[62] N.T., 9/17/14, 59-60: 24-25, 1-12.

24

### b. Plaintiff is Entitled to a New Trial Because Defendants Repeatedly Introduced Objectionable Collateral Source Evidence in Violation of this Court's Pre-Trial Rulings Throughout the Trial.

"As a general rule, it is error for the jury to be informed that the plaintiff has been compensated by a collateral source."[63] A new trial is necessary where evidence of collateral sources of payment may have improperly influenced the jury's verdict.[64] "The collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer."[65]

> While the primary focus of the collateral source rule is to avoid the preclusion or diminution of the damages otherwise recoverable from the wrongdoer based on compensation recovered from a collateral source, in some instances, the violation of the collateral source rule can affect the jury's deliberation and decision on the issue of liability.[66]

In a case such as this where there is a violation of the collateral source rule,

> it is impossible to conjecture what influence the [collateral source evidence] had in bringing the jury to the conclusion it reached. When an error in a trial is of such consequence that, like a dash of ink in a can of milk, it cannot be strained out, the only remedy, so that justice may not ingest a tainted fare, is a new trial.[67]

Statements made in violation of the law and Court rulings can be "reversible error and of such a basic character that even if unobjected to [entitle] the plaintiff to a new trial."[68]

In Nigra v. Walsh, the Superior Court remanded the case for a new trial, despite the fact the jury found the defendant not negligent.[69] The Superior Court ordered a new trial in Nigra

---

[63] Havasy v. Resnick, 609 A.2d 1326, 1334 (Pa. Super. 1992).
[64] See Deeds, 110 A.3d at 1012 ("Further, when improperly admitted testimony may have affected a verdict, the only correct remedy is the grant of a new trial.").
[65] Id. (internal quotations omitted)( citations omitted).
[66] Id. at 1013.
[67] Id. at 1013-14.
[68] Lobalzo v. Varoli, 185 A.2d 557, 560 (Pa. 1962).
[69] Nigra v. Walsh, 797 A.2d 353, 361 (Pa. Super. 2002).

25

because of the violations of the collateral source rule by the defendant. The Superior Court held that the defendant "violated the collateral source rule and that it is impossible to conjecture what influence this violation had in the bringing the jury to the conclusion that [the defendant's] negligence was not the proximate cause of [the plaintiff's] injuries."[70] The Court in Nigra ordered a new trial because,

> [b]ased on the above excerpts and our review of the record, we conclude that the questions by Appellee's counsel when combined with his opening statements did indeed suggest to the jury that Appellee was receiving social security disability benefits, and that his wife, Kathleen was, or had been receiving social security disability benefits. The cumulative effect of counsel's questions and comments is that the jury was informed that Appellant was receiving social security disability benefits for the same injury which is the subject of the litigation.[71]

Defendants repeatedly and willfully violated this Court's ruling on Plaintiff's Motion *in limine* which precluded any evidence of payment from a collateral source, including questions, testimony, argument, commentary, and/or innuendo regarding Jenna's receipt of public assistance benefits.

Defense counsel closing blatantly violated the collateral source rule. The following is an expert from the closing of Dr. Harvey and Dr. Kuhn:

> And we are comforted to know that this child is well cared for at KenCrest. And everyone that came in from KenCrest, her nursing care, her therapist, **by all accounts are giving her everything that she needs.** And it was funny because Nurse Buchanan was a bit critical of the case manager, that lovely young woman who came in and talked about how she oversees the care of Jenna, meets with the doctors weekly, every two weeks. And Nurse Buchanan says Oh, well, you need an independent voice. And Mr. Messa, the voice that Jenna doesn't have. Well, that's part of why we presented some of that evidence, because Nurse Buchanan is adding things that this child gets that are appropriate. So consider, if you get to that, is that a fair estimation of what she needs or is she **getting everything that she needs?**[72]

---

[70] Nigra, 797 A.2d at 360.
[71] Id. at 358.
[72] N.T. 9/23/14, 37:17-38:12 (emphasis added).

26

A.26

The above comments made by defense counsel, in clear violation of the collateral source rule, suggest to the jury that Jenna had all the care she needed and that she did not require any additional compensation.

There are numerous places in the record in which Defendants violated the collateral source rule. While cross-examining Lorraine B. Buchanan, Plaintiff's life care expert, Defendants elicited testimony in violation of the collateral source rule.

> Kurt Straub, Esq.: Now, as I read through your report and your life care plan, am I correct that at KenCrest Jenna is actually receiving all of the healthcare treatment and services which she needs or from which she might benefit?
>
> Lorraine B. Buchanan: She is.[73]

The improper questioning was continued:

> Joan Orsini-Ford, Esq.: And would I be correct that in your review of the KenCrest records, Jenna is getting all of the care that has been prescribed for her by her physicians?
>
> Lorraine B. Buchanan: Yes.
>
> Joan Orsini-Ford, Esq.: And are you familiar with the Individuals with Disabilities Act?
>
> Lorraine B. Buchanan: The ADA?
>
> Joan Orsini-Ford, Esq.: The ADA.
>
> Lorraine B. Buchanan: Yes.
>
> Joan Orsini-Ford, Esq: And would you agree that the law provides that educational programs provide programs to maximize the potential for students?
>
> Joseph L. Messa, Jr., Esq.: Objection, your Honor.
>
> The Court: Basis?
>
> Joseph L. Messa, Jr., Esq.: This one goes to collateral source --

---

[73] N.T., 9/15/14, 175:13-17.

The Court: She's already testified that if she's in school there are certain benefits. She's already testified to it.

Joan Orsini-Ford, Esq.: In terms of schools, what specifically are the schools required to provide for Jenna?

Lorraine B. Buchanan: They're required to provide whatever services are necessary to give Jenna access to education. That might be the nurse that's with her, it might be the aide that's with the nurse, it might be the speech therapy, PT, OT on a minimal level. But again, yes, **they are required to provide it.**

Joan Orsini-Ford, Esq: **So every child like Jenna is entitled to receive those services?**

Joseph L. Messa, Jr., Esq.: Objection, your Honor.

The Court: Sustained.

Joseph L. Messa, Jr., Esq.: I would really --

The Court: Sustained. Asked and answered. Sustained.[74]

The following testimony was elicited by defense counsel on cross-examination of

Patricia Rooney, who is one of Jenna's pediatric nurses at KenCrest:

Joan Orsini-Ford, Esq.: Good morning. I just wanted to clarify some of the services that Jenna receives.

Patricia Rooney: Sure.

Joan Orsini-Ford, Esq: **The educational services, is that something that all children are entitled to receive?**

Patricia Rooney: Yes.[75]

Additionally, defense counsel asked:

Joan Orsini-Ford, Esq.: And the therapies that she receives, in addition to school, does KenCrest provide therapies at home?

Patricia Rooney: Yes. There's speech, OT and PT.

---

[74] N.T., 9/15/14, 180:24-182:14 (emphasis added).
[75] N.T. 9/12/14, 23:7-13 (emphasis added).

28

Joan Orsini-Ford, Esq.: And I take it that all of the therapies that are prescribed for Jenna she does receive?

Patricia Rooney: Yes.[76]

Defense counsel only asked a single question of Jenna's treating pediatrician:

Joan Orsini-Ford, Esq.: Dr. Cellucci, good afternoon. Am I correct that Jenna is receiving all the care that you prescribe?

Michael Cellucci, M.D.: Yes.

Joan Orsini-Ford, Esq.: Thank you. That's all I have.[77]

On direct examination of Susan Davis, R.N., Defendant's life care planning expert, Defendants violated the collateral source rule by inquiring about reimbursement rates for the yearly cost of residential placement:

Joan Orsini-Ford, Esq.: Did you have an opinion as to whether it would be -- whether you agreed with home placement with skilled support in this case?

Susan Davis, R.N.: My opinion is that Jenna is receiving the quality of care and services in the residential facility and would remain there.

Joan Orsini-Ford, Esq.: Now, you also came up with a cost, a yearly cost applying the reimbursement rates, correct?

Susan Davis, R.N.: For Medical Assistance, correct.

Joan Orsini-Ford, Esq.: And the cost for residential placement under that scenario was how much?

Susan Davis, R.N.: I just have to grab the report.

Joseph L. Messa, Jr., Esq.: Objection, Your Honor.

Susan Davis, R.N.: Just give me a moment.

The Court: Ladies and gentlemen, you're going to take a walk.[78]

---

[76] N.T. 9/12/14, 24:17-23.
[77] N.T. 9/10/14, 33:11-16.
[78] N.T., 9/18/14, 69:23-71:17.

29

During Plaintiff's cross-examination of Susan Davis, R.N., the following testimony occurred:

> Joseph L. Messa, Jr., Esq.: But what you didn't do, ma'am, was you didn't make any allocation whatsoever, not a nickel, for Jenna to receive occupational therapy that she's receiving now, right?
>
> **Susan Davis, R.N.: Because it's allocated through the Individuals With Disability Act. And therapy, physical therapy, occupational therapy, speech therapy, recreation therapy, psychology is provided through the IDA program, okay. Federally-funded state program.**
>
> Joseph L. Messa, Jr., Esq.: Ma'am, can you answer my question?
>
> Joseph L. Messa, Jr., Esq.: Your Honor, I'm going move to strike the last answer.
>
> The Court: Ladies and gentlemen, strike the last answer and I'll give you a detailed instruction as to why in my closing charge to you.

Due to Defendants repeated willful violations of this Court's Motion *in limine* ruling and the collateral source rule it is clear that "[t]he ink was in the milk; we cannot now extract it through magic or chemistry."[79] Here "improperly admitted testimony may have affected a verdict."[80] Therefore, the **only** proper remedy is to grant Plaintiff a new trial.

## CONCLUSION

For the foregoing reasons, this Court properly Granted Plaintiff's Motion for Post Trial Relief and Granted a New Trial.

BY THE COURT:

DATE: _8. 10. 2015_

ROBERT J. MELLON, J.

---

[79] Deeds, 110 A.3d at 1014.
[80] Id. at 1012.

30