Olga **MIRABEL** and Jorge Mirabel

v.

Rolando **MORALES** c/o Latin Express Services, Inc., Latin Express Services, Inc., Richard A. Schulgen c/o Comcast Corporation, and Comcast Corporation.

Appeal of Comcast of Philadelphia II, LLC (Incorrectly Identified as Comcast Corporation) and Richard A. Schulgen.

Superior Court of Pennsylvania.

Argued June 27, 2012.

Filed Nov. 2, 2012.

146 ■ ▬▬▬▬▬▬▬▬▬

Ronald P. Schiller and Alan C. Promer, Philadelphia, for appellants.

Daniel J. Siegel, Havertown, for Mirabel, O. & J., appellees.

Joseph T. Murphy, Philadelphia, for Latin Express and Morales, appellees.

BEFORE: STEVENS, P.J., GANTMAN, J., and PANELLA, J.

OPINION BY PANELLA, J.

Before us is an appeal from the Appellants, Richard Schulgen and Comcast of Philadelphia II, LLC (Comcast), from a post-trial order denying part of the Appellants' motion for a new trial. On February 15, 2011, a jury found the Appellants liable for injuries the Appellee, Olga Mirabal,[1] suffered in a car accident. After the verdict, the Appellants filed a motion for a new trial because Mirabal's counsel made improper statements at closing regarding race and the size and wealth of Comcast. The trial court granted part of the Appellants' motion and awarded a new trial solely on damages. After the trial court issued this order, the Appellants appealed. The issues on appeal concern whether the trial court abused its discretion by not granting a new trial on both liability and damages. After careful review, we reverse.

On February 11, 2007, Olga Mirabal was traveling from Union City, New Jersey, to Miami, Florida, on a bus operated by Latin Express, Inc. *See* N.T., Trial, 2/7/11, at 157–59. While this bus was traveling through Philadelphia, it collided with a van, owned and operated by Comcast, at the intersection of Aramingo Avenue and Cumberland Street. *See* N.T., Trial, 2/9/11, at 139, 145, 152–54.

---

1. The caption and every document in the certified record spells *Olga Mirabal's* last name as "Mirabel." At trial, however, Mirabal stated that her name is spelled "Mirabal." N.T., Trial, 2/7/11, at 147. We will spell *Mirabal's* name as she said it was spelled at trial.

Both the driver of the bus, Rolando Morales, and the driver of the Comcast van, Richard Schulgen, testified that they had green lights to proceed through the intersection when the accident occurred. *See id.,* at 145; N.T., Trial, 2/10/11, at 43. According to Morales, he was proceeding southbound on Aramingo Avenue through a green light at the intersection of Aramingo and Cumberland when the Comcast van pulled into the middle of the intersection. *See* N.T., Trial, 2/9/11, at 145. Morales tried to avoid hitting the Comcast van by swerving to the right, but the bus ultimately hit the van. *See id.* According to Schulgen, after his light turned green, he pulled out into the intersection to make a left turn when he saw a bus approaching from Aramingo Avenue. *See* N.T., Trial, 2/10/11, at 43–46. Schulgen tried to avoid hitting the bus by making a hard left onto Aramingo Avenue. *See id.,* at 55. However, this maneuver was unsuccessful and the bus hit Schulgen's van. *See id.,* at 56.

Because of this accident, Mirabal suffered back and shoulder pain that ultimately required surgery. *See* N.T., Trial, 2/7/11, at 174, 182. Mirabal sued Schulgen, Comcast, Morales, and Latin Express to compensate her for these injuries.[2] *See* Complaint, *Mirabel v. Morales,* No. 4548, (December 29, 2008).

Before trial, Schulgen and Comcast filed a motion *in limine* in which they sought to preclude all parties from making statements about the size and wealth of Comcast. *See* N.T., Motions Hearing, 2/4/11, at 18–19. No party objected to this motion and the trial court granted it.[3] *See id.,* at 19–20. Also before trial, Mirabal settled her claims against Morales and Latin Express. *See* Order Granting Release of Morales and Latin Express, *Mirabel v. Morales,* No. 4548 (February 11, 2011). The only claims that were addressed at trial were Mirabal's claims against Schulgen and Comcast, and the cross-claims between Morales and Latin Express, and Schulgen and Comcast.[4]

According to the trial court, at trial, the parties selected a jury of ten African–American women, one African–American man, and one Caucasian woman. Trial Court Opinion, at 9. In his closing arguments, Mirabal's counsel made several statements in which he tried to appeal to the racial makeup of the jury. He stated:

> You walked in this room before. Right? You walked in this room. Did it look like a movie studio when you walked in that first day. Everything all taped up and everything? And now it has turned into this. I walked in, I was like, is this Warner Brothers? No it's Comcast Brothers. Well, maybe no brothers.

2. Mirabal's husband, Jorge Mirabal, was also a co-plaintiff in this matter for loss of consortium. *See* Complaint, *Mirabel v. Morales,* No. 4548, at 5 (December 29, 2008). This claim was dropped before trial. *See* N.T., Trial, 2/7/11, at 51–52.

3. Morales and Latin Express argue that this pre-trial motion only applied to Mirabal. *See* Appellees' Brief, at 12. However, the order clearly states that the motion *in limine* precludes "plaintiffs and defendants, Latin Express and Rolando Morales, from making statements as to the size, wealth, or assets of Comcast." Order Granting Motion *in Limine, Mirabel v. Morales,* No. 4548 (February 4,

2011). Moreover, the trial court stated on the record that this order applied to all parties. *See* N.T., Motion Hearing, 2/4/11, at 18–20.

4. Comcast and Schulgen, filed cross-claims for indemnity and contribution against with the co-defendants, Morales and Latin Express. *See* Defendants Comcast and Schulgen Answer with New Matter and Cross–Claim, *Mirabel v. Morales,* No. 4548, at 6–7 (March 23, 2009). Morales and Latin Express responded with similar cross-claims for indemnity and contribution against Schulgen and Comcast. *See* Defendants' Answer with New Matter and Cross–Claim, *Mirabel v. Morales,* No. 4548, at 5 (March 26, 2009).

N.T., Trial, 2/11/11, at 86. Comcast and the trial court believed that Mirabal's counsel attempted to appeal to the racial composition of the jury with this statement by implying that there were no "brothers" or African–Americans representing Comcast at the trial. N.T., Post–Trial Motions Hearing, 6/9/11, at 9–11; Trial Court Opinion, at 15. This statement also violated the pre-trial order that excluded statements regarding the size and wealth of Comcast as Mirabal's counsel compared the technology used by Comcast at trial to a movie studio.

In addition to trying to appeal to the racial composition of the jury, Mirabal's counsel also emphasized the fact that Mirabal is Hispanic and was treated poorly by Comcast because she is Hispanic. First, while discussing Comcast's argument that the bus hit the van because the driver of the bus, Morales, was distracted by passengers on the bus asking him to stop for lunch, Mirabal's counsel stated:

> Come on now. Like, you know, like these Latinos, like we got to get to the Ritz for our 2 o'clock appointment, don't you know? Otherwise it's cancelled. Come on. They are a bunch of Latinos on the bus. Like she said, we are talking with each other, we are joking with each other. Hey, stop the bus, we trying to get some lunch. Hey, Poppie, we hungry, we want to get some lunch.

N.T., Trial, 2/11/11, at 76–77. Further, Mirabal's counsel stated:

> Let me tell you something. If that bus wasn't a bus full of Latinos but it was [sic] bus of CEOs or presidents on their way to a golf outing, okay, and this accident happened, I guarantee you, it would have been a different kind of trial in here if it had even got to here.

*Id.*, at 150. After Comcast and Schulgen objected to this statement, and the trial court sustained that objection, Mirabal's counsel continued to emphasize the fact that Mirabal was treated poorly by Comcast because she is Hispanic. *See id.*, at 151. He stated:

> Who do we have that they treated in this way? We have Olga Mirabel, [sic] Latino from North Philadelphia—from North Jersey. Who is she? Who is she? What does she have? What does she matter to anybody but her own family? Who knows about her? Who is going to write a story about her? Right? She is a Latino from North Jersey that nobody knows. It is not J–Lo sitting up in here. Okay? That's nice. But this is who she is. And this is how she was treated. And make no mistake, she was treated this way for who she is.

*Id.*

Counsel for Latin Express also violated the pre-trial order excluding discussion on the size and wealth of Comcast when counsel for Latin Express made statements about Comcast's size and wealth at closing. Latin Express's counsel stated, "Mr. Schulgen gets involved in an accident with a bus. He phones it in. Here comes Wally another driver. And all of a sudden the big machinery of Comcast gets involved about engineering our response to the accident." *Id.*, at 107. In addition, Latin Express's counsel stated:

> Counsel for the Comcast is going to take his cell phone and he is probably going to step outside that courtroom and he is probably going to call 1–800–Comcast, and they are going to reach that building that I am looking at up there in the big Comcast tower. And they are all going to be waiting for that phone call. And they are going to say—he will call the operator and he will say, Operator, get me Mr. Comcast. And when he does, he will tell them what your verdict

is. This is your chance to talk to Mr. Comcast.

*Id.*, at 113–14. Latin Express's counsel also tried to compare the wealth and size of Comcast with the small size of Latin Express by stating, "Latin Express is run in a hole in the wall." *Id.*, at 111.

■ After all parties closed, Schulgen and Comcast objected[5] to the inappropriate statements about race and the size and wealth of Comcast made by counsel for both Mirabal and Latin Express during closing argument. *See id.*, at 154–56. Schulgen and Comcast asked the trial court to declare a mistrial because of these inappropriate statements. *See id.* Rather than declaring a mistrial, the trial court issued a curative instruction, telling the jury to disregard any statements made at closing concerning race. *See id.*, at 170. However, the trial court gave no instruction to the jury to disregard statements at closing concerning the size and wealth of Comcast. *See id.*, at 170–213.

After deliberations, the jury found Schulgen, Comcast, Morales, and Latin Express all negligent and the cause of the injuries Mirabal suffered in the accident. *See* N.T., Verdict, 2/15/11, at 3–4. The jury attributed twenty-five percent of the causal negligence for the accident to Morales and Latin Express; the jury attributed seventy-five percent of the causal negligence for the accident to Schulgen and Comcast. *See id.*, at 4. The jury awarded Mirabal $350,000 in damages for her injuries. *See id.*, at 5.

A week after the jury issued its verdict, Schulgen and Comcast filed a motion for a new trial because of the inappropriate statements made at closing. *See* Schulgen and Comcast Post-Trial Motion for a New Trial, *Mirabel v. Morales*, No. 4548 (February 23, 2011). After hearing argument on this motion, the trial court granted in part and denied in part the motion for a new trial. *See* Order Granting in Part Denying in Part Motion for a New Trial, *Mirabel v. Morales*, No. 4548 (June 27, 2011). The trial court granted Schulgen and Comcast a new trial limited solely to the issue of damages; the trial court denied Schulgen and Comcast a new trial on the issue of liability. *See id.* Schulgen and Comcast then appealed that order.[6] *See* Notice of Appeal, *Mirabel v. Morales*, No. 4548 (June 27, 2011).

On appeal, Schulgen and Comcast raise three issues. *See* Appellants' Brief, at 4. First, Schulgen and Comcast claim that the trial court abused its discretion by not granting a new trial on liability because Mirabal's counsel "delivered a racially charged closing argument that appealed improperly to the jury's prejudices, taint-

---

**5.** Although Schulgen and Comcast objected to statements made at closing after all parties had closed, their objections were timely and not waived. The Supreme Court of Pennsylvania has held that an objection to arguments made at closing is timely if: (1) the argument was recorded and available for review at trial, and (2) the objection was sufficiently specific to give the trial court the opportunity to correct the prejudicial effect of the improper arguments. *Commonwealth v. Adkins*, 468 Pa. 465, 471–72, 364 A.2d 287, 290 (1976). We agree with the trial court that both requirements for *Adkins* were met here. *See* Trial Court Opinion, at 37. Therefore, Schulgen and Comcast did not waive their objec-

tion to the closing arguments made by Mirabal and Latin Express.

**6.** We note that we have jurisdiction to hear this appeal under Pa.R.A.P. 311(a)(6), which allows a party, as a right, to appeal an interlocutory order that grants a new trial. *See also Patula v. Northwestern Nat'l. Ins. Co. of Milwaukee*, 329 Pa.Super. 321, 478 A.2d 488, 489 fn. 1 (1984) (explaining that the Superior Court has jurisdiction to hear an appeal from an order granting a new trial limited solely to the issue of damages under Pa.R.A.P. 311(a)(6)).

ing the jury's verdict." *Id.* Second, Schulgen and Comcast claim that the trial court abused its discretion by not granting a new trial on liability because both counsel for Mirabal and Latin Express violated a pre-trial order when they made statements about the size and wealth of Comcast at closing. *See id.* Finally, Schulgen and Comcast claim that the trial court abused its discretion by not granting a new trial on liability because the trial court erred by instructing the jury on the "choice of ways" doctrine. *See id.*

■ We note that in all three issues Schulgen and Comcast are challenging the trial court's denial of a motion for a new trial. Our standard of review from an order denying a motion for a new trial is whether the trial court committed an error of law, which controlled the outcome of the case, or committed an abuse of discretion. *See Christian v. Yanoviak,* 945 A.2d 220, 225 (Pa.Super.2008). A trial court commits an abuse of discretion when it "rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Rettger v. UPMC Shadyside,* 991 A.2d 915, 924 (Pa.Super.2010), *appeal denied,* 609 Pa. 698, 15 A.3d 491 (2011) (citation omitted).

With the above principles in mind, we turn to the first two issues. Schulgen and Comcast argue that the trial court abused its discretion by not granting a new trial on liability because counsel for Mirabal and Latin Express made impermissible statements during closing argument. First, Schulgen and Comcast argue that the trial court abused its discretion by not granting a new trial on liability because Mirabal's counsel used race in his closing argument to appeal to the passions and prejudices of the jury. *See* Appellants' Brief, at 29. While the trial court gave a curative instruction to the jury with regard to the statements concerning race, Schulgen and Comcast argue that this instruction was insufficient to eradicate the prejudice. *See id.,* at 26. We agree.

When counsel makes prejudicial statements in closing argument, it is the duty of the trial court to take affirmative steps to cure the prejudicial harm of those statements. *See Young v. Washington Hosp.,* 761 A.2d 559, 562 (Pa.Super.2000). "However, there are certain circumstances where the comments of counsel are so offensive or egregious that no curative instruction can adequately obliterate the taint." *Siegal v. Stefanyszyn,* 718 A.2d 1274, 1277 (Pa.Super.1998) (citation omitted). Our Supreme Court has held that counsel's use of race in a closing argument to appeal to the passions and prejudices of the jury was so offensive and egregious that no curative instruction could remedy the prejudice. *See Mittleman v. Bartikowsky,* 283 Pa. 485, 487–88, 129 A. 566, 567 (1925) (holding that counsel calling the opposing party "the newer, slicker members of his race" was "so manifestly improper, and so glaringly out of place in an orderly trial of the issue created in this case, that we cannot say the verdict represents the decision of an impartial jury").

■ The statements by Mirabal's counsel in his closing—where he tried to use race to appeal to the jury—were so offensive and egregious that the curative instruction given by the trial court was insufficient to remedy the prejudice. First, the statement by Mirabal's counsel that highlighted the fact that Comcast was not represented by "brothers" or African–Americans was so egregious and improper, like the statement made by counsel in *Mittleman,* that no curative instruction could remedy the prejudice Comcast suffered from that remark. Moreover, counsel for Mirabal's emphasis of the fact that

Mirabal is Hispanic, and was treated poorly because she is Hispanic, was irrelevant to a determination of whether the defendants were negligent or a determination of the damages Mirabal was owed. Rather, counsel was blatantly attempting to appeal to the perceived passions and prejudices of the jury to get a favorable verdict. Therefore, like in *Mittleman,* no curative instruction by the trial court could have eliminated the prejudice that these statements had on Comcast.

Second, Schulgen and Comcast argue that the trial court abused its discretion by not granting a new trial on liability because counsel for Mirabal and Latin Express violated a pre-trial order by making statements about the size and wealth of Comcast. *See* Appellants' Brief, at 36. The trial court gave no curative instruction to the jury for these statements, and Schulgen and Comcast argue that the only remedy is a new trial. *See id.*

■■■ We have held that when a party intentionally violates a pre-trial order, the only remedy is a new trial, "in order to promote fundamental fairness, to ensure professional respect for the rulings of the trial court, to guarantee the orderly administration of justice, and to preserve the sanctity of the rule of law." *Poust v. Hylton,* 940 A.2d 380, 387 (Pa.Super.2007). Here, counsel for both Mirabal and Latin Express admitted at trial that they discussed the wealth and size of Comcast in their closing to highlight the economic disparities between the parties. *See* N.T., Trial, 2/11/11, at 162. These statements

were in clear violation of a pre-trial order;[7] thus, Schulgen and Comcast are entitled to a new trial because of these statements.

While the trial court agreed that a new trial was the appropriate remedy, it limited a new trial to only the issue of damages. The trial court found the damage award of $350,000 to be excessive. *See* Trial Court Opinion, at 36. According to the trial court, this excessive verdict demonstrated that the racial statements and the statements about the size and wealth of Comcast affected the jury in awarding damages. *See id.,* at 25, 35. Conversely, the trial court did not believe that these statements affected the jury in deciding liability. *See id.* The trial court reasoned that there was more than sufficient evidence at trial for the jury to find Schulgen and Comcast liable. *See id.,* at 35. Further, the trial court argued that the jury apportioning seventy-five percent of the liability to Comcast "demonstrates that the jury was not blinded by prejudice or overcome by bias when deciding the issues of negligence and degree of fault." *Id.,* at 36. We find that the trial court abused its discretion in finding that the prejudicial statements made by counsel only affected the jury in awarding damages; therefore, we must reverse.

■■ Under the common law, a new trial limited to damages was not permitted; however, in Pennsylvania new trials limited to damages are allowed in certain specific circumstances. *See Davis v. Steiger-*

---

**7.** Statements regarding the size and wealth of Comcast would have been grounds for a new trial even if the trial court did not issue a pre-trial order excluding it. In the absence of punitive damages, it is "irrelevant, improper, and prejudicial" for a jury to consider the defendant's wealth. *Feld v. Merriam,* 506 Pa. 383, 396, 485 A.2d 742, 749 (1984) (citation omitted). Thus, discussion of the wealth of a

defendant during closing can warrant a new trial. *See id.* While a curative instruction can overcome the prejudice of these types of statements, *see id.,* 506 Pa. at 397 fn. 6, 485 A.2d at 748 fn. 6, no such instruction was given here. Thus, Schulgen and Comcast would have been entitled to a new trial regardless of this pre-trial order.

*walt,* 822 A.2d 22, 30 (Pa.Super.2003). A trial court can order a new trial only on the issue of damages if: (1) "the issue of damages is not 'intertwined'[8] with the issue of liability," and (2) "where the issue of liability has been 'fairly determined.'" *Kraner v. Kraner,* 841 A.2d 141, 147 (Pa.Super.2004) (citation omitted; footnote added).

■ The trial court abused its discretion in ordering a new trial solely on damages because liability was not "fairly determined." When, as here, the damages awarded were excessive, a trial court can only grant a new trial solely on damages if liability was "fairly determined." *Lambert v. PBI Industries,* 244 Pa.Super. 118, 366 A.2d 944, 956 (1976). Liability is "fairly determined" if there were no errors on the record that might have affected the jury's verdict on liability. *Id.*

The numerous statements made by counsel for Mirabal and Latin Express were errors that could have affected the jury's verdict on liability. In his closing, Mirabal's counsel appealed to the perceived passions and prejudices of the jury by making a comment that Comcast was not represented by African–Americans. *See* N.T., Trial, 2/11/11, at 86. Further, Mirabal's counsel emphasized the fact that Mirabal is Hispanic and was treated poorly by Comcast because of her ethnicity. *See id.,* at 76–77, 150–51. While the trial court tried to correct these errors through a curative instruction, as stated *supra,* the curative instruction could not remedy the prejudice suffered by Comcast because of these statements. *See Mittleman v. Bartikowsky,* 283 Pa. 485, 487–88, 129 A. 566,

567 (1925). In addition, counsel for both Mirabal and Latin Express violated a pretrial order by discussing the wealth and size of Comcast and comparing the disparity of wealth between the parties. *See* N.T., Trial, 2/11/11, at 86, 107, 111, 113–14.

Contrary to the trial court's finding, these prejudicial statements made by counsel at closing could have affected the jury's decision with regard to both liability and damages. We have stated that improper evidence on the wealth of the defendant "may well have impacted on the jury's decision to allow the claim and in fixing the amount of the alleged." *Baker v. Nat'l Mut. Casualty Ins. Co.,* 370 Pa.Super. 461, 536 A.2d 1357, 1362 (1987) (citation omitted). In *Baker,* we reasoned that evidence of the defendant's wealth tends to prejudice the jury to find the defendant liable—not based on the evidence or the law—but on the defendant's ability to pay. *See id.* Similarly, the improper statements regarding the size and wealth of Comcast could have influenced the jury to find Comcast liable—not because of the evidence presented at trial or the law—but because the jury believed that Comcast had the ability to pay. Moreover, in apportioning fault between Comcast and Latin Express, the jury could have attributed more fault to Comcast because of its size and wealth as compared to Latin Express, which counsel stated was "run in a hole in the wall."

The improper statements emphasizing the race of the representatives of Comcast and Mirabal may well have also influenced the jury in their findings on liability.

---

8. We note that liability is not intertwined with damages here. Our Supreme Court has stated that liability is not intertwined with damages when the question of damages is readily separable from the issue of liability. *See Troncatti v. Smereczniak,* 428 Pa. 7, 10, 235 A.2d 345, 346 (1967). Here, the question of damages is readily separable from the question of liability. The question of the nature and extent of the injuries Mirabal suffered and the amount she was owed to compensate her for those injuries was not related, and readily separable, to the question of who was liable for the accident.

Again, the injection of race into this case could have caused the jury to find Schulgen and Comcast liable, not based on evidence or the law, but based on the passions and prejudices that counsel elicited through these racial statements.

Liability was contested at trial with both drivers offering contradicting testimony on who was responsible for the accident. *See* N.T., Trial, N.T., Trial, 2/9/11, at 145; 2/10/11, at 43. The jury may have decided this question of liability against Comcast based on the passions and prejudices that were elicited from the jury through counsels' improper statements. As the trial court stated in its opinion, these improper statements "polluted" the trial with prejudices against Comcast. Trial Court Opinion, at 1. This pollution cannot be said to have just contaminated the jury's verdict on damages. This pollution contaminated the jury's entire verdict.

The statements made by counsel remind us of a portion of an opinion written by Justice Green of our Supreme Court over a century ago, that we have recently reiterated in *Poust v. Hylton*, 940 A.2d 380, 387 (Pa.Super.2007), and *Siegal v. Stefanyszyn*, 718 A.2d 1274, 1277 (Pa.Super.1998).

> The comments of counsel complained of were of the most offensive and reprehensible character, not sustained by any evidence in the cause and justly deserving the severe censure of the court. We can discover nothing to palliate them in the least degree, and inasmuch as there was no other efficacious remedy available to correct the mischief done, it was the plain duty of the court to withdraw a juror and continue the cause [resulting in a new trial]. Many judges are in the habit of doing this upon proper occasion, and that practice deserves to be widely extended, so that counsel who indulge in the habit of making such comments, may be properly admonished that they cannot do so except at severe cost to their clients and themselves.

*Holden v. Pennsylvania Railroad Co.*, 169 Pa. 1, 18, 32 A. 103, 108 (1895).

We find that the trial court abused its discretion in limiting a new trial solely to damages. These prejudicial comments made by counsel for Mirabal and Latin Express warranted a new trial for both liability and damages.

 Third, we address whether the trial court erred in instructing the jury on the "choice of ways" doctrine.[9] We will grant a new trial based on an error in the jury charge if "the jury was probably misled by what the trial judge charged." *Price v. Guy*, 558 Pa. 42, 45, 735 A.2d 668, 670–71 (1999) (citation omitted). A jury instruction is faulty if the evidence presented at trial does not support it. *See Marlowe v. Travelers' Ins. Co.*, 313 Pa. 430, 432–33, 169 A. 100, 101 (1933). When the record is void of evidence satisfying the elements of a particular legal doctrine, the trial court commits a reversible error by discussing that doctrine in its charge. *See Angelo v. Diamontoni*, 871 A.2d 1276, 1279 (Pa.Super.2005).

 The "choice of ways" doctrine still exists in Pennsylvania despite the substitution of comparative negligence for contributory negligence. *See Updyke v. BP Oil Co.*, 717 A.2d 546, 552 (Pa.Super.1998). This doctrine states: "[w]here a person, having a choice of two ways, one of which is perfectly safe, and the other of

---

9. Comcast and Schulgen did not challenge the "choice of ways" instruction on the grounds that it is a doctrine of comparative negligence that only applies to the plaintiff's conduct. As such, under Pa.R.A.P. 2119(b), that argument is waived. We will only examine whether there was sufficient evidence to warrant this jury instruction.

which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover." *Downing v. Shaffer*, 246 Pa.Super. 512, 371 A.2d 953, 956 (1977) (citation omitted). This doctrine does not require anybody to follow a particular route, however. *See Oswald v. Stewart*, 301 Pa.Super. 463, 448 A.2d 1, 2 (1982). "Even if the alternative course could be determined hypothetically safer but the one chosen is still free from hazard and authorized by law, a tortfeasor may not escape responsibility for his negligence by maintaining that the person injured ... could have escaped injury by taking the alternative route." *Downing*, 371 A.2d at 956 (citation omitted).

■ In order for there to be sufficient evidence to warrant a jury instruction for the doctrine, there must be "evidence of (1) a safe course, (2) a dangerous course, and (3) facts which would put a reasonable person on notice of the danger or actual knowledge of the danger." *Id.* (citation omitted). The "choice of ways" doctrine has a narrow application and it should only be applied in "the clearest case." *Oswald*, 448 A.2d at 2. In cases in which "the doctrine has been applied to find that the plaintiff was contributorily negligent, the danger the plaintiff chose to confront was indisputably obvious." *O'Brien v. Martin*, 432 Pa.Super. 323, 638 A.2d 247, 249–50 (1994).

The facts in *Downing* are similar to the facts at hand. In *Downing*, the plaintiff had the choice of turning left or right when leaving her driveway. *See* 371 A.2d at 954–55. The plaintiff chose to turn left from her driveway, but a hill obstructed her view from the right. *See id.* The defendant struck the plaintiff's car in the rear after she completed her turn, resulting in the plaintiff's injuries. *See id.* We found in *Downing* that the "choice of

ways" doctrine did not apply because the evidence established that the plaintiff's view was blocked in both directions, leaving her with no safe alternative. *See id.*, at 957.

The trial court found that the safe route for Schulgen would have been to continue east on Cumberland past the intersection. The trial court stated:

> There was no evidence introduced at trial that Mr. Schulgen could not safely continue east on Cumberland past the Aramingo intersection when he thought the bus approaching him on Aramingo was going to broadside him. Mr. Schulgen never said there was traffic on Cumberland, he only said that if there was traffic he could not proceed on Cumberland. Even if there were traffic, Cumberland on that side of Aramingo is a two-way street and there was no evidence that there was traffic in Mr. Schulgen's lane.

Trial Court Opinion, at 41.

■ The jury instruction should not have been given here because there was no evidence that supported the trial court's finding that proceeding straight on Cumberland was a safe route. Schulgen testified that there were possibly cars lined up ahead of him on Cumberland. *See* N.T., Trial, 2/10/11, at 43, 54. Moreover, Schulgen testified to the existence of a line of cars behind him. *See id.* This evidence suggests that proceeding straight on Cumberland may not have been a feasible alternative. *See id.* No evidence established that proceeding straight down Cumberland was a safe alternative. *See id.*, at 54–56 (discussing alternative of continuing straight on Cumberland). Contrary to the trial courts findings, a lack of evidence showing that there were cars or obstructions on Cumberland does not prove that Cumberland was a safe alternative. Rather, there must be evidence establishing

that Cumberland was free of obstructions that would allow Schulgen to proceed safely down it. Without such evidence, the trial court erred in giving this instruction.

In addition, turning left on Aramingo was "still free from hazard and authorized by law." *Downing,* 371 A.2d at 956. The danger of turning left on Aramingo was not "indisputably obvious" because turning left at the intersection was authorized under the law and Schulgen turned left to avoid being broadsided by the Latin Express bus. *See* N.T., Trial, 2/10/11, at 55.

The jury instruction for the "choice of ways" doctrine "probably misled" the jury because it implied the availability of a safe alternative, one not established by the evidence, which may have affected the jury's calculus when determining liability. As the trial court's decision to issue this jury instruction was therefore an error, we reverse.

Order reversed. Case remanded for a new trial as to both liability and damages consistent with this opinion. Jurisdiction relinquished.