J-A06009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JAMES PELLECHIA, AS EXECUTOR OF THE ESTATE OF KATHLEEN PELLECHIA, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| YEN SHOU CHEN, M.D., AND POCONO GASTROENTEROLOGY, PC AND POCONO AMBULATORY SURGERY CENTER, LIMITED AND POCONO AMBULATORY SURGERY CENTER, INC. | |
| | No. 1208 EDA 2015 |

Appeal from the Judgment Entered June 25, 2015
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 11026 Civil 2011

BEFORE:  PANELLA, J., SHOGAN, J., and RANSOM, J.

MEMORANDUM BY PANELLA, J.                    **FILED JUNE 13, 2017**

In this appeal from a defense verdict in a medical malpractice trial, Appellant, James Pellechia, as executor for his deceased wife, Kathleen Pellechia's estate, challenges three evidentiary rulings made by the trial court. In each instance, we conclude that the estate is due no relief on appeal and therefore affirm.

The transcripts reveal that Kathleen Pellechia presented to Appellee, Dr. Yen Shou Chen, M.D., in January 2010 with consistent, long-term, daily stomach complaints. At the time, she was also treating a heart condition by taking blood thinning medications.

Dr. Chen scheduled an endoscopic procedure to address Kathleen's stomach complaints. He was concerned with the impact that the blood thinners would have on her recovery from the surgery, but also recognized the cardiac risk that might arise from a lengthy pause in taking the medication. He therefore recommended that Kathleen continue to take the blood thinners until the day before the endoscopic procedure.

During the procedure, Dr. Chen discovered three polyps in Kathleen's stomach and removed them. Afterwards, he advised Kathleen that he had removed the polyps and that if she suffered from any digestive issues or chest pain during recovery, she should contact him immediately. She was subsequently discharged and sent home.

The next morning, James called Dr. Chen's office at 7:07 a.m. and informed the answering service that Kathleen was nauseated, vomiting, and had passed out the night before. Dr. Chen called back a few minutes later with advice.

This advice was a heavily litigated issue at trial. Both parties agreed that Dr. Chen prescribed an anti-nausea medication for Kathleen. Dr. Chen testified that he also directed James to take his wife to the emergency room immediately. In contrast, James testified that Dr. Chen made no mention of the emergency room.

James drove to his pharmacy, which opened a 9:00 a.m. that morning. He filled the prescription and gave the anti-nausea medicine to his wife, but

her condition continued to worsen. At approximately 12:30 p.m., he again called Dr. Chen to inform him that Kathleen's condition was worsening. Dr. Chen informed him to take Kathleen to the emergency room immediately. Despite the hospital's best efforts, Kathleen ultimately perished from cardiac shock and blood loss.

The estate presented the expert testimony of John Loughrey, M.D., a gastroenterologist, on the issue of whether Dr. Chen followed the appropriate standard of care, and Robert Stark, M.D., a cardiologist, on the issue of causation. During *voir dire* of Dr. Stark, the defense questioned him about a consent decree in Connecticut that required certain aspects of his practice be monitored by other cardiologists. The estate objected to this question, but the transcript does not reveal an explicit ruling on the estate's objection. However, the questioning continued, and Dr. Stark confirmed the existence of the consent decree.

The defense presented the expert testimony of Adam Elfant, M.D., a gastroenterologist, on the issue of standard of care, and Paul Coady, M.D., a cardiologist, on the issue of causation. Of importance to this appeal, Dr. Elfant opined that the prescription for an anti-nausea drug was within the standard of care. Furthermore, he opined that it did not necessarily indicate that Dr. Chen had not directed James to take his wife to the hospital immediately; it was common to issue such a prescription for convenience's sake if the emergency room visit revealed no emergent condition.

At the conclusion of the trial, the jury returned a verdict finding that Dr. Chen and the other defendants had not been negligent in their care for Kathleen. The estate filed post-trial motions seeking a new trial that the trial court denied. This timely appeal followed.

On appeal, the estate challenges the trial court's refusal to grant a new trial based upon three of its evidentiary rulings. "Our standard of review from an order denying a motion for a new trial is whether the trial court committed an error of law, which controlled the outcome of the case, or committed an abuse of discretion." **Mirabel v. Morales**, 57 A.3d 144, 150 (Pa. Super. 2012) (citation omitted). "A trial court commits an abuse of discretion when it rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." **Id**. (citation omitted).

Unless an error of law controls the outcome of a case, we will not reverse an order denying a new trial. **See Lockley v. CSX Transp., Inc.**, 5 A.3d 383, 388 (Pa. Super. 2010). "[A] litigant is entitled only to a fair trial and not a perfect trial." **Id**. at 392 (citation omitted).

With regard to the admissibility of evidence:

> [A] trial court has broad discretion … and is not required to exclude all evidence that may be detrimental to a party's case. Such rulings on the admission of evidence will not be overturned by this Court absent a conclusion that the law has been overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record.

***Schuenemann v. Dreemz, LLC***, 34 A.3d 94, 102 (Pa. Super. 2011).

In its first argument, the estate contends that the trial court erred in allowing Dr. Elfant and Dr. Coady to testify to matters beyond the fair scope of their expert reports. In particular, it argues that these experts testified to the appropriateness of Dr. Chen's prescription of the anti-nausea medicine when they did not mention this opinion in their expert reports.

> Pennsylvania Rules of Civil Procedure require that an expert's testimony at trial be limited to the *fair scope* of his deposition testimony or pretrial report:
>
>> To the extent that the facts known or opinion held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, the direct testimony of the expert at the trial may not be inconsistent with or go beyond the *fair scope* of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto . . . .
>
> Pa.R.C.P. 4003.5(c) (emphasis supplied).
>
> . . .
>
>> [I]n deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether, under the circumstances of the case, the discrepancy between the expert's pre-trial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response*.*

***Bainhauer v. Lehigh Valley Hospital***, 834 A.2d 1146, 1150-51 (Pa. Super. 2003) (citations omitted, emphasis omitted). Rule 4003.5 is intended

to "prevent incomplete or 'fudging' of reports which would fail to reveal fully the facts and opinions of the expert or his grounds therefore[.]" Pa.R.C.P. 4003.5, *Comment*.

After reviewing the record and the briefs of the parties, we conclude that the trial court opinion denying the estate's post-trial motions, authored by the Honorable Arthur L. Zulick, thoroughly and adequately addresses this claim. **See** Trial Court Opinion, 2/12/15, at 5-10 (concluding that anti-nausea drug issue was not a separate claim of malpractice, but rather an evidentiary buttress for the claim that Dr. Chen did not initially direct James to take Kathleen to the hospital; that Dr. Loughrey conceded in his testimony that the prescription was not a breach of the standard of care; that Dr. Elfant's testimony did not constitute a surprise; and that there is no indication in the transcript that Dr. Coady testified regarding the anti-nausea drug).[1] We therefore conclude that the estate is due no relief on this issue.

Next, the estate argues that the trial court erred in permitting the defense to present improper character evidence in support of Dr. Chen. Several nurses and physician's assistants testified as to Dr. Chen's

_____

[1] In its statement of the case, the estate purports to argue that its issue with Dr. Coady was his testimony regarding Kathleen's use of blood thinners pre-surgery. We remind counsel that all argument is to be excluded from the statement of the case. **See** Pa.R.A.P. 2117(b). In the argument section of the estate's brief, no mention is made of Dr. Coady opining on Kathleen's pre-surgical use of blood thinners. **See** Appellant's Brief, at 16-17. To the extent the estate's argument is based upon Dr. Coady's testimony on the use of blood thinners, the argument is waived.

reputation in the community for communicating with patients. The estate contends that this testimony was impermissible under the Rules of Evidence.

As noted by Appellees and the trial court, however, the estate did not object at trial to most of this testimony. The estate only identifies three instances where it preserved this objection: 1) During the testimony of nurse Lori Beloni, 2) during the testimony of nurse Jacqueline Venitiere, and 3) during the testimony of physician's assistant Tiffany Mazur. However, the objections proffered by the estate to nurse Beloni's and nurse Venitiere's testimony were objections to the foundation for reputation evidence. *See* N.T., Jury Trial, 8/6/14, at 233-235, 264. The estate did not base any objection to the nurses' testimony on the grounds that reputation testimony was improper.

Thus, the only issue preserved for appeal, *see* Pa.R.A.P. 302(a), is the objection to physician's assistant Mazur's testimony. *See* N.T., Jury Trial, 8/8/14, at 12-13. On this issue, we have reviewed the record and the briefs of the parties, and conclude that the trial court opinion denying the estate's post-trial motions thoroughly and adequately addresses this claim. *See* Trial Court Opinion, 2/12/15, at 11-14 (concluding that Dr. Chen's credibility had been attacked by James's testimony regarding the initial post-surgery call and thus, the evidence was admissible under the Rules of Evidence, and that in any event, the estate suffered no prejudice from the admission of Mazur's

testimony on Dr. Chen's reputation for truthfulness). The estate's second issue on appeal therefore merits no relief.

Finally, the estate argues that the trial court erred in permitting the defense to question Dr. Stark regarding the Connecticut consent decree. The estate's short, one page argument on this issue contains no citation to authority. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***Umbelina v. Adams***, 34 A.3d 151, 161 (Pa. Super. 2011) (citation omitted; brackets in original). In spite of the absence of any citation to any authority for its argument, the estate's brief manages to raise a cognizable claim. We therefore decline to find it waived.

However, after reviewing the record and the briefs of the parties, we conclude that the trial court opinion denying the estate's post-trial motions thoroughly and adequately addresses this claim. ***See*** Trial Court Opinion, 2/12/15, at 14-17 (concluding that exploration of the consent decree issue was appropriate during *voir dire* of Dr. Stark, as the possession of an unrestricted medical license was a pre-requisite to his testimony under the MCARE Act). Thus, the estate's final issue on appeal merits no relief.

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/13/2017