# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David P. Venen                      :

                                  :

         v.                     :

                                    :

Brent A. Gwynn, and             :

Denise Gwynn, his wife,        :

and Pro Builders Concrete, Inc.,  :   No. 957 C.D. 2023

                    Appellants    :   Argued:  October 8, 2024

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                             FILED:  October 31, 2024

Brent A. Gwynn (Gwynn), Denise Gwynn, his wife, and Pro Builders Concrete, Inc. (collectively, Appellants) appeal from the Greene County Common Pleas Court's (trial court) March 2, 2023 order: (1) finding that Appellants' use of the property located at 110 Carmichaels Street in Rice's Landing Borough (Borough) (Property) is industrial in nature and falls within the definition of a contractor's yard, and that a contractor's yard is not permitted in the Single Household Residential Zoning District (R-1 District); and (2) directing Appellants to, within 60 days, discontinue any and all open yard use of the Property for the storing, loading, and unloading of any and all building and construction supplies used in Appellants' business and to discontinue the open yard use of any and all equipment for industrial, commercial, or business purposes on the Property. Appellants also appeal from the trial court's April 27, 2023 order denying their Motion for Reconsideration and the trial court's May 23, 2023 Statement pursuant

to Pennsylvania Rule of Appellate Procedure (Rule) 1925(a) (Rule 1925(a) Statement).[1]  Appellants present two issues for this Court's review: (1) whether the trial court abused its discretion and failed to provide Appellants with the broadest and least restrictive land use when the Borough's Zoning Ordinance (Ordinance)[2] does not define a contractor's yard; and (2) whether the trial court erred when it found as a fact that Appellants' building of a fence between the Property and David P. Venen's (Venen) neighboring property was consistent with using one's property for industrial reasons.  After review, this Court affirms.

## Background

Venen and Appellants own adjoining lots in the Borough.  Venen owns one lot containing approximately half an acre, and Appellants own two lots, each containing approximately half an acre.  The Property is located in the Borough's R-1 District.  Venen filed an action in the trial court for Enforcement of Zoning Ordinance Pursuant to Section 617 of the Pennsylvania Municipalities Planning Code (MPC)[3] (Count I), and Nuisance (Count II).  In his Amended Complaint,

---

[1] This Court treats Appellants' Motion for Reconsideration as their Post-Trial Motion in accordance with Pennsylvania Rule of Civil Procedure 227.1.  *See Bennett v. Rose*, 183 A.3d 498 (Pa. Cmwlth. 2018); *see also Linder v. City of Chester City Council*, 78 A.3d 694, 698 (Pa. Cmwlth. 2013) ("[T]he [m]ayor's [m]otion for [r]econsideration functioned as a motion for post-trial relief, thereby preserving the issues raised therein for appellate review . . . .").

This Court observes that the trial court's Rule 1925(a) Statement is not an appealable order, but rather the trial court's statement that it would not be filing an opinion pursuant to Rule 1925(a) and would be relying on its March 2, 2023 order.  Therefore, this Court will not address it further.

[2] Zoning Ordinance of the Borough of Rice's Landing, Greene County, Pennsylvania (2001).  *See* Supplemental Reproduced Record.

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10617.  Section 617 of the MPC provides, in relevant part:

> In case any building, structure, landscaping[,] or land is . . . used in violation of any ordinance enacted under [the MPC] or prior enabling laws, . . . any aggrieved owner . . . of real property who

2

Venen averred that Appellants are engaged in a concrete and general construction business, including aspects of construction involving a spray foam business, the equipment and materials for which they maintain in a contractor's yard on the Property. *See* Amended Complaint at 4.

### Facts

The trial court conducted a bench trial on November 15, 2022. After directing the parties to submit proposed findings of fact (FOF) and conclusions of law, and the parties submission thereof, on March 2, 2023, the trial court dismissed Count II. Relative to Count I, the trial court found that Appellants' use of the Property is industrial in nature and falls within the definition of a contractor's yard, and that a contractor's yard is not permitted in the R-1 District. The trial court directed Appellants to, within 60 days, discontinue any and all open yard use of the Property for storing, loading, and unloading building and construction supplies used in Appellants' business and to discontinue the open yard use of any and all equipment for industrial, commercial, or business purposes on the Property.

On March 9, 2023, Appellants filed their Motion for Reconsideration. On March 30, 2023, Appellants filed their Notice of Appeal in the Pennsylvania Superior Court (Superior Court). On April 14, 2023, the trial court directed Appellants to file a Concise Statement of Errors Complained of on Appeal pursuant to Rule 1925(b) (Rule 1925(b) Statement). On April 26, 2023, Appellants filed their

---

shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding to prevent, restrain, correct[,] or abate such building, structure, landscaping[,] or land, or to prevent, in or about such premises, any act, conduct, business[,] or use constituting a violation.

53 P.S. § 10617.

Rule 1925(b) Statement. On April 27, 2023, the trial court denied Appellants'
Motion for Reconsideration. On May 23, 2023, the trial court filed its Rule 1925(a)
Statement. On June 30, 2023, the Superior Court transferred the appeal to this
Court.[4]

---

[4]
> [This Court's review] in cases arising from non-jury trial verdicts is
> to determine whether the findings of the trial court are supported by
> [substantial] evidence and whether the trial court committed error in
> any application of the law. The findings of fact of the trial [court]
> must be given the same weight and effect on appeal as the verdict of
> a jury. [This Court] consider[s] the evidence in a light most
> favorable to the verdict winner. [This Court] will reverse the trial
> court only if its findings of fact are not supported by [substantial]
> evidence in the record or if its findings are premised on an error of
> law.

*Newman & Co., Inc. v. City of Phila.*, 249 A.3d 1240, 1244 n.5 (Pa. Cmwlth. 2021) (quoting
*Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 664-65 (Pa. Super. 2014)).
Further,

> [this Court's] review from an order denying a [post-trial motion] is
> whether the trial court committed an error of law, which controlled
> the outcome of the case, or committed an abuse of discretion. A trial
> court commits an abuse of discretion when it "rendered a judgment
> that is manifestly unreasonable, arbitrary, or capricious, has failed
> to apply the law, or was motivated by partiality, prejudice, bias, or
> ill will." *Rettger v. UPMC Shadyside*, 991 A.2d 915, 924 (Pa. Super.
> 2010) . . . (citation omitted).

*Mirabel v. Morales*, 57 A.3d 144, 150 (Pa. Super. 2012) (citation omitted).

**Discussion**

Initially, Section 2.15 of the Ordinance provides in pertinent part:

A. District Purposes: The R[-]1 District was drawn around [the Borough's] three largest residential neighborhoods as well as several undeveloped areas to which these neighborhoods could properly expand. The three neighborhoods are predominantly composed of single-household, detached homes. Th[e R-1 D]istrict's regulations are designed to (1) protect such homes where they are already established, (2) promote similar development in the vacant parts of the [R-1 D]istrict, (3) retain the [R-1 D]istrict's low density, (4) require proper design standards for future development, and (5) enhance the unique character of th[e R-1 D]istrict, its structures, and its quality of life.

B. The R[-]1 District Regulations: Each land use, lot, and structure in th[e R-1 D]istrict shall follow the regulations below.

1. Within th[e R-1 D]istrict, a lot may be used or occupied for the permitted principal uses, permitted accessory uses, temporary uses, special exception uses, and conditional uses that are given for th[e R-1 D]istrict in Article 2, Section 265 [of the Ordinance], "Land Uses, Off-Street Parking, and Off-Street Loading."

2. Each land use in th[e R-1 D]istrict shall provide off-street parking spaces as required by Article 2, Section 265 [of the Ordinance], "Land Uses, Off-Street Parking, and Off-Street Loading."

3. Each land use in th[e R-1 D]istrict shall provide off-street loading berths as required by Article 2, Section 265 [of the Ordinance], "Land Uses, Off-Street Parking, and Off-Street Loading."

Reproduced Record (R.R.) at 2a-3a. Under Article 2 of the Ordinance a "contractor's yard" is not a permissible "land use" in the "R[-]1" District. R.R. at 5a. It is undisputed that the Ordinance does not define *contractor's yard*. *See* Article

5

8 of the Ordinance, Terminology, Supplemental Reproduced Record (S.R.R.) at 122b-137b. However, the Ordinance instructs:

> The words that are defined in this [A]rticle shall be interpreted as they are defined here. **Words that are not defined here shall be given their usual and ordinary meaning** within the Borough . . . . *See Section 121* [*of the Ordinance*], "*Interpreting the Language of this Ordinance*," for other rules concerning the interpretation of this [O]rdinance's wording.[5]

S.R.R. at 122b (bold emphasis added).

---

[5] Section 121 of the Ordinance provides:

> For the purposes of this [O]rdinance, words shall be interpreted as follows unless noted otherwise.
>
> A. Words that are defined in Article 8 [of the Ordinance], "Terminology," shall be interpreted as they are defined there. Undefined terms must be given their usual and ordinary meaning within the Borough.
>
> B. Words used in the present tense shall imply the future tense as well.
>
> C. The word "person" refers to firms, associations, organizations, trusts, partnerships, companies, corporations, and individual persons.
>
> D. The word "shall" infers a mandatory sense.
>
> E. The word "may" infers a permissive sense.
>
> F. The word "lot" is a synonym of "plot," "piece," and "parcel."
>
> G. The words "used" and "occupied" as applied to any lot or building shall be construed to imply the words "intended, arranged, maintained, and/or designed to be used or occupied."
>
> H. The word "day" shall be interpreted as being a full calendar day.
>
> I. **When the meaning of a regulation as it applies to a given property is not clear**, **it shall be interpreted in favor of that property and against any implied extension of the regulation**.

S.R.R. at 9b (emphasis added).

Appellants argue that the trial court created a definition that was not the least restrictive but, instead, defined a restricted use of property that the Borough did not intend in the creation of a land use called contractor's yard. Appellants contend that the only evidence of the Borough's intention in defining a contractor's yard was the Borough Council's assertion that it was an enterprise that was open to the public. Appellants assert that the use of their home was never an entity open to the public. Venen rejoins that the Ordinance clearly prohibits activity resembling that of Appellants in residential zoned areas. Venen asserts that Appellants plainly operate a business in contravention to the Ordinance that would most resemble a contractor's yard from the prescribed list of activities provided in the Ordinance. Venen claims that the trial court properly found that the land use was of an industrial nature and that Appellants' activity resembled a contractor's yard.

> As Justice Felix Frankfurter cogently observed, "legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him." *Addison v. Holly Hill Fruit Products*, 322 U.S. 607 . . . (1944). Here, the term [contractor's yard] [is] not [a] technical term[] which ha[s] acquired a peculiar meaning within the context of the [Ordinance], and, thus, we **ascertain [its] meaning in accordance with [its] common and approved usage**. *Sivick* [*v. State Ethics Comm'n*], 238 A.3d [1250,] 1259 [(Pa. 2020)]. As our [Supreme] Court has explained, **in determining such usage**, **it is proper to consult dictionaries**. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 75 (Pa. 2014).

*Greenwood Gaming & Ent., Inc. v. Commonwealth*, 263 A.3d 611, 620 (Pa. 2021) (emphasis added).

A contractor's yard is defined as "a lot, building or part thereof wherein vehicles, equipment and/or supplies are parked, stockpiled, stored and maintained for use by a contractor for the construction and/or renovation trades."

7

www.lawinsider.com/dictionary/contractors-yard (last visited Oct. 30, 2024).[6] The

trial court determined:

> In setting forth the usual and ordinary meaning, [Venen]
> relie[d] on an internet search which defines the term as "a
> lot, building or part thereof wherein vehicles, equipment
> and/or supplies are parked, stockpiled, stored and
> maintained for use by a contractor for the construction
> and/or renovation trades." [Venen's Proposed FOF] at 4.
> [Appellants] respond[ed] by first noting that "[t]he [trial
> c]ourt is bound to define the undefined terms as broadly as
> possible to give landowners who are alleged to be in
> violation the least restrictive use." [Appellants' Proposed
> FOF] at 11. [The trial court] agree[s]. [Appellants] then
> [went] on to note that both Franklin and Cumberland
> Townships, both located nearby in Greene County, have
> Zoning Ordinances that define a contractor's yard as "a
> commercial establishment offering for sale building
> supplies, steel, coal, heavy equipment, food and gain [sic]
> and similar goods, but not including the wrecking,
> salvaging, dismantling of junked automobiles and similar
> vehicles." *Id*. at 13.
>
> Although [the trial court] assign[s] weight to the Franklin
> and Cumberland Township definition, [it] [is] not
> convinced that this is the usual and ordinary meaning.
> Indeed, [Appellants] point[ed] to the only other reference
> to a contractor's yard within the . . . Ordinance; the Off-
> Street Parking Requirements which provides no assistance
> in defining the term. The existence of the term
> contractor's yard in the Off-Street Parking Requirements
> Section and as a listed land use, but without any additional
> references or definition[,] indicates that while [the]
> Borough may have acquired much of its [] Ordinance from
> the existing ordinances of nearby communities, its
> removal or non-inclusion of the definition[, the trial court]
> can only conclude was intentional. In searching for the
> usual and ordinary meaning, the term contractor's yard
> does not conjure images consistent only with the definition
> as set forth by [Appellants], but would also include a yard

---

[6] There is no definition for contractor's yard in the Merriam-Webster dictionary.

8

in which supplies are stockpiled and stored for use by a contractor.

Initially, the [trial c]ourt is not in the best position to define undefined terms in any zoning code. However, relying on our need to define the undefined terms as broadly as possible to give landowners who are alleged to be in violation the least restrictive use, [the trial court] only partially accept[s] [Venen's] provided definition. [The trial court] hereby find[s] that the usual and ordinary meaning of a contractor's yard, as used in the . . . Ordinance[], is "an open lot, or part, thereof, wherein supplies are stockpiled, stored, and maintained for use by a contractor for the construction, service, and/or renovation trades."

Trial Ct. Op. at 4-5; R.R. at 102a-103a. This Court discerns no error in the trial court's reasoning.

With respect to Appellants' contention that because they do not open their Property to the public, or conduct any business thereon, the trial court erred by concluding that the Property was used as a contractor's yard, this Court addressed a similar argument in *Taddeo v. Commonwealth*, 412 A.2d 212 (Pa. Cmwlth. 1980). Therein,

[the a]ppellant and his wife live[d] . . . in an area zoned as R-1, Rural-Residential. [The a]ppellant conduct[ed] an asphalt business at 604 Monongahela Avenue, Glassport, Pennsylvania. **Various vehicles including trucks**, **rollers**, **trailers**, **back-hoes and other equipment necessary for the conduct of an asphalt business** [**were**] **regularly parked at** [**their residence**,] **the Pineview address** because, according to [the a]ppellant's wife, it is "easier (for the employees) to pick up the vehicles right at the house instead of going to Glassport." Apart from the fact that some business calls may be received at the Pineview address since the telephone number at that address appears in some advertising, the remainder of [the a]ppellant's business is transacted in Glassport or at job sites. However, the registered address for [the a]ppellant's business, filed in the court[]house . . . is listed as 600 Pineview Avenue.

9

From those facts, the [lower] court concluded that the evidence was sufficient to prove that [the a]ppellant's residential property was being used for commercial purposes and that such use constitute[d] a violation of the [t]ownship's zoning ordinance. [This Court] agree[d]. **The use of the equipment parked at [the a]ppellant's home and in the vacant lot adjacent to it is such an integral part of [the a]ppellant's business**, **which is certainly commercial in nature**, **as to be inseparable from that business**. **By parking the equipment at his residence**, **[the a]ppellant has transferred that part of his commercial enterprise to a residential site**, something the zoning ordinance will not permit him to do.

Nor can [the a]ppellant's use of the Rural-Residential property be justified as an accessory use. Storage of heavy equipment is neither incidental to, nor customary in, a residential area. *See Cook v. Bensalem* [*Twp.*] *Zoning* [*Bd.*] *of Adjustment*, . . . 196 A.2d 327 ([Pa.] 1964).

*Taddeo*, 412 A.2d at 213 (emphasis added).

Similarly here, the trial court expounded:

It is undisputed that [Gwynn] is a concrete contractor and that he also sprays insulation foam into structures. The concrete business appears to be the primary use[,] however. It is also undisputed that [Appellants] store the equipment for the business on their [P]roperty . . . . This equipment undisputedly includes at least one truck, a spray foam trailer, 55[-]gallon drums which must be occasionally loaded onto [Gwynn's] truck, and the usual tools of a concrete contractor. Also stored on the [P]roperty are additional pieces of equipment including, but not limited to, a skid-loader and excavator. Since purchasing the lot nearest to [Venen], [Appellants] have cleared the land, put up a fence, installed a gravel lot, and built a retaining wall. While [Venen] avers that the [Appellants] run their equipment, including skid-loader and excavator for business purposes, [Appellants] aver that the primary work done by [Appellants] to their "[P]roperty involving [their] equipment is to improve the [P]roperty for residential purposes." [Appellants' Proposed FOF] at 5. While [Appellants] may sometimes

10

> use this equipment for residential purposes, the equipment
> is clearly present to support the business.

R.R. at 104a. The trial concluded "that [Appellants'] use of the [P]roperty is industrial in nature and falling within the definition of a contractor's yard as set forth herein. [The trial court] also [found] that a contractor's yard is not permitted in an area zoned 'R-1' or Single Household Residential District." R.R. at 106a. This Court discerns no error in the trial court's conclusions.[7]

**Conclusion**

Viewing the evidence in the light most favorable to Venen, as this Court must, this Court holds that the trial court's findings are supported by substantial record evidence. *See Newman & Co., Inc. v. City of Phila.*, 249 A.3d 1240, 1244 n.5 (Pa. Cmwlth. 2021). Further, based upon this Court's review of the record, this Court cannot hold that the trial court rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. *See Mirabel v. Morales*, 57 A.3d 144, 150 (Pa. Super. 2012).

For all of the above reasons, the trial court's orders are affirmed.

_____
ANNE E. COVEY, Judge

Judge McCullough did not participate in the decision in this matter.

---

[7] Based on this Court's disposition of the first issue, it is of no moment whether the trial court properly found as a fact that Appellants' building of a fence between the Property and Venen's neighboring property was consistent with using one's property for industrial reasons. Therefore, this Court need not address the second issue.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David P. Venen                   :

                                  :

       v.                  :

                                    :

Brent A. Gwynn, and           :

Denise Gwynn, his wife,       :

and Pro Builders Concrete, Inc.,  :    No. 957 C.D. 2023

                 Appellants    :

## O R D E R

AND NOW, this 31st day of October, 2024, the Greene County Common Pleas Court's March 2, 2023 and April 27, 2023 orders are affirmed.

_____

ANNE E. COVEY, Judge